342 S.W.3d 344 (2011)
In the Matter of: H.N.S. and K.J.S., minors.
No. SD 30826.
Missouri Court of Appeals, Southern District, Division Two.
May 26, 2011.
*346 Darlene F. Parrigon, Pierce City, MO, for Appellant.
Donald L. Cupps of Cassville, MO, for Respondents C.D.N. and P.E.N.
Keith Parris, Monett, MO, for Respondent Barry County Juvenile Office.
Robert J. Foulke of Cassville, MO, for Minor.
JEFFREY W. BATES, Judge.
J.J.S. (Father) appeals from a judgment terminating his parental rights to his daughter, H.N.S. (Child).[1] The trial court terminated Father's parental rights in a Chapter 453 adoption action on the ground *347 that he willfully abandoned and neglected Child.
"We will sustain the trial court's judgment in an adoption case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law." S.L.N. v. D.L.N., 167 S.W.3d 736, 738 (Mo.App.2005); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court defers to the trial court's factual findings and credibility determinations. S.L.N., 167 S.W.3d at 738. This is so because the trial court "is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). "The trial court is in an especially advantageous position to determine the intent of a parent-witness in an adoption case." Id. As a result, "[g]reater deference is granted to a trial court's determinations in custody and adoption proceedings than in other cases." S.L.N., 167 S.W.3d at 741; In re Adoption of C.M.B.R., 332 S.W.3d 793, 815 (Mo. banc 2011).
The clear, cogent and convincing standard of proof applies to this Chapter 453 adoption proceeding. C.M.B.R, 332 S.W.3d at 819; W.B.L., 681 S.W.2d at 454. "Clear, cogent, and convincing evidence is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In re S.M.H., 160 S.W.3d 355, 362 (Mo. banc 2005); see C.M.B.R, 332 S.W.3d at 815; W.B.L., 681 S.W.2d at 454. This standard of proof may be satisfied even though the court has contrary evidence before it or the evidence might support a different conclusion. W.B.L., 681 S.W.2d at 454. We view the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment. C.M.B.R., 332 S.W.3d at 801. So viewed, the following evidence was adduced at the trial.
Child was born on February 12, 2004. Her mother is K.N. (Mother). When Child was three years old, Mother had another child, son K.J.S., who had a different biological father. K.J.S. was born on May 7, 2007 with the help of paramedics at Father and Mother's home. After K.J.S. was born, he was immediately taken to the hospital where he and Mother tested positive for methamphetamine. That same day, both Child and K.J.S. were taken into protective custody by the Children's Division (Division). The children were placed with Mother's parents, C.D.N. and P.E.N., the prospective adoptive parents in this case (hereinafter referred to as the Adoptive Parents).
In May 2007, Father visited Child three times at the Adoptive Parents' home. On May 29, 2007, the Division offered Father a treatment plan to work toward reunification, but he refused to sign the treatment plan at that time.
In December 2007, Father sent Child a Christmas card. In February 2008, Father sent Child a birthday card. In March 2008, Father signed a treatment plan and visited Child three times at the Division. Father's last visit was March 24, 2008.
In November 2008, Father was arrested in Arkansas for driving while intoxicated and assaulting a police officer. In December 2008, Father violated his probation for an earlier Missouri offense, which was theft of a firearm. Thereafter, Father's probation was revoked and he was sent to the Missouri Department of Corrections, where he remained throughout the duration of these proceedings. Since Father's *348 last visit with Child in March 2008, he had no contact with Child. He did not call Child or send any cards or letters. Father had been ordered to pay $206 per month as child support. He made no voluntary payments.
On January 7, 2009, the Adoptive Parents filed a petition to terminate parental rights and to adopt Child (the petition). Relying on Chapter 453, the petition alleged that Father had "for a period of six month[s] immediately prior to the filing of this petition, willfully abandoned [Child] and/or willfully, substantially and continuously neglected to provide [Child] with necessary care and protection."
In June 2009, as the result of an intercepted tax refund, some support was credited against Father's child support obligation. Trial in the matter was held the following March 22, 2010. Father was able to appear at trial pursuant to a writ of habeas corpus and updated the court as to his current situation. Father testified that he was due to be released on parole two days later, but that he had an Arkansas detainer involving a three-year sentence on his conviction for second-degree battery of a police officer. Father expected to serve some additional time in prison in Arkansas.
Division worker Mary Ann Russell (Russell) testified that Father failed to complete any of the terms of the treatment plan except one. He did complete an inpatient drug rehab program at the Larry Simmering Center in December 2008. Father had no contact with Child aside from three visits in May 2007, three visits in March 2008 and the cards he sent in December 2007 and February 2008. As of the date of trial, Father owed $5,108.46 for child support. Russell opined that it was in the best interest of Child that Father's parental rights be terminated. The GAL submitted a written report similarly recommending that Father's parental rights be terminated.
Thereafter, the trial court entered a judgment terminating Father's parental rights to Child pursuant to § 453.040(7).[2] The court found that "from May 9, 2007 to March 24, 2008 [Father] visited [Child] on 6 occasions and had no visits since March 24, 2008." The court also found that Father mailed Child "2 cardsone in December of 2007 and one in February of 2008." With respect to child support, the court made a finding that Father was "in arrears for payment of child support in the sum of $5108.00. The only support credited toward this arrearage was as the result of a tax return refund intercept in June of 2009. Father paid no child support for the period of 6 months immediately prior to the filing of [the petition] on January 7, 2009." The court concluded that:
[T]he six month period prior to the filing of [the petition] was from July 7, 2008 through January 7, 2009. During that period of time [Father] was incarcerated in November and December and returned to the Missouri Department of Corrections in December. However, prior to that time from July of 2008 to November of 2008 he did not have contact with [Child], as his last visit with her was March 24, 2008. [Father] provided no financial support for [Child] during that period of time. Finally, [Father] did not mail cards or gifts to [Child] for the entire period from July 7, 2008 through January 7, 2009. Therefore, the Court finds that [Father] has willfully abandoned [Child], born February 12, 2004 who is one year of age or older and willfully substantially and continuously *349 neglected to provided [Child] with necessary care and protection for at least six months immediately before the filing of [the petition].
This appeal followed.[3] Additional facts necessary to the disposition of the case are included below as we address Father's five points of error. For ease of analysis, we will consider Father's points out of order.

Point III
In Father's third point, he contends the trial court erred in terminating Father's parental rights because the Adoptive Parents did not plead that termination was authorized pursuant to the "failure to rectify" ground found in § 211.447.5(3). This argument has no merit. In an adoption proceeding, consent is not required from:
A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]
§ 453.040(7). Presenting sufficient proof to meet this statutory requirement not only has the effect of obviating any requirement to obtain that parent's consent, but it also has the effect of terminating that person's parental rights. In re Adoption of C.M.B.R., 332 S.W.3d 793, 806-07 (Mo. banc 2011). "When a person alleges that consent of the parent is not required for the adoption under section 453.040, the statutory mandates of chapter 211 are irrelevant to the chapter 453 proceeding unless specifically cross-referenced and mandated by chapter 453." C.M.B.R., 332 S.W.3d at 806-07. There is no such specific cross-reference or mandate in § 453.040(7). Therefore, the requirements of Chapter 211 have no application to this adoption proceeding. The Adoptive Parents were not required to rely upon Chapter 211 to obtain a termination of Father's parental rights, and the trial court was not required to make any of the statutory findings mandated in that chapter.[4] Point III is denied.

Points I and II
In Father's first and second points, he contends the trial court erred in finding that the requirements for willful abandonment and neglect were met. Considered collectively, these points posit error for three reasons: (1) the Division failed to arrange visits during Father's incarceration; (2) Father provided Child with child support through "wage garnishments and tax intercept," and sent "letters and cards"; and (3) the Adoptive Parents took affirmative steps to stop communication between Father and Child by blocking Father's calls after May 2007. We find no merit in these arguments.
Here, the Adoptive Parents alleged, and the trial court found, both *350 grounds for termination of parental rights authorized by § 453.040(7): willful abandonment and continuous neglect. In Chapter 211 termination cases in which multiple statutory grounds for termination have been found, an appellate court need only determine that one statutory ground was proven in order to affirm the judgment. See C.M.B.R., 332 S.W.3d at 816 n. 17; In re L.M., 212 S.W.3d 177, 181 (Mo. App.2007); In the Interest of L.A.M.R., 179 S.W.3d 418, 419 (Mo.App.2005). We believe this same principle applies to a termination authorized by § 453.040(7). Therefore, we need only address the trial court finding that Father willfully abandoned Child.
Abandonment has been described as an intentional withholding from the child, without just cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance and the opportunity for the display of filial affection. In re E.F.B.D., 245 S.W.3d 316, 327 (Mo. App.2008); see C.M.B.R., 332 S.W.3d at 816. This largely presents an issue of intent, which must be inferred from the parent's conduct. C.M.B.R., 332 S.W.3d at 816; In re Adoption of W.B.L., 681 S.W.2d 452, 455 (Mo. banc 1984). Evidence of the parent's conduct both before and after the requisite six-month period may be considered. In re J.B.D., 151 S.W.3d 885, 888 (Mo.App.2004). However, "[o]nly the parent's conduct prior to the filing of the petition for termination may be considered to establish the six-month period." Id. The greatest weight must be given to conduct during the statutory period. C.M.B.R., 332 S.W.3d at 819; In re K.N.H., 118 S.W.3d 317, 321 (Mo.App. 2003).
During the six-month period between July 7, 2008 through January 7, 2009, the court found that Father had no contact with Child, did not send her any cards or letters, and provided absolutely no child support.[5] This is not consistent with the desire of a parent to establish a relationship with his child, even while the parent is incarcerated. See In Interest of M.L.K., 804 S.W.2d 398, 402 (Mo.App. 1991). "Incarceration does not excuse a parent's obligation to provide the parent's child with a continuing relationship, and parental rights may properly be terminated while the parent is incarcerated." Id.; see In re Adoption of M.D.L., 682 S.W.2d 886, 889 (Mo.App.1984) (evidence that father failed to send letters, cards and gifts while incarcerated and had no contact with child was sufficient to support finding of abandonment). Moreover, Father was not incarcerated for much of the statutory six-month period, and made no attempt to visit, call or send cards, letters or gifts of any kind. Father's attempt to blame his failure to maintain contact with Child on others, such as the Division and the Adoptive Parents, is to no avail. The record reveals that it was Father alone who failed to maintain a relationship with Child during the statutory period.
Father's argument that he did later pay some child support through the tax intercept is similarly to no avail, as that payment was both involuntary and subsequent to the statutory period. In addition, he may not rely upon his incarceration as an excuse for failing to contribute any money toward Child's support. M.L.K., 804 S.W.2d at 402 (noting that the substantially reduced wages received by an incarcerated parent does not excuse his or her obligation to make monetary contributions *351 toward the child's support); see In re L.N.D., 219 S.W.3d 820, 828 (Mo.App.2007) (though incarcerated, father was not relieved of his obligation to make a minimal financial contribution for child's support); In re S.J.G., 871 S.W.2d 638, 642 (Mo.App. 1994) (even a parent who lacks the ability to fully support a child still has a duty to make minimal support contributions for that child). Lastly, Father committed additional crimes and violated his probation after Child was born and should have realized that such acts have consequences harmful to Child. See, e.g., In re Z.L.R., 306 S.W.3d 632, 636 (Mo.App.2010) (distinguishing between parents who commit bad acts before having children from those who commit bad acts after they have children and should realize that such acts have consequences harmful to those children).
Based upon our review of the record, there was ample evidence to support the trial court's finding that Father willfully abandoned Child. That finding meant that Father's consent to the adoption was not required and effectively terminated Father's parental rights. See § 453.040(7); C.M.B.R., 332 S.W.3d at 806-07. Accordingly, Points I and II are denied.

Point IV
In Father's fourth point, he contends the trial court erred in finding that the termination of his parental rights was in Child's best interest. We review the trial court's best interest determination for abuse of discretion. In re P.L.O., 131 S.W.3d 782, 789 (Mo. banc 2004); In re B.J.K., 197 S.W.3d 237, 243 (Mo.App.2006). "Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." In re A.S., 38 S.W.3d 478, 486 (Mo.App.2001). The determination of what is in the child's best interest is an ultimate conclusion for the trial court based on the totality of the circumstances. In re D.L.W., 133 S.W.3d 582, 585 (Mo.App.2004). It is the duty of the trial court to weigh the evidence presented relating to best interest, and we will not reweigh that evidence. In re L.A.M.R., 179 S.W.3d 418, 421 (Mo.App. 2005). We also defer to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. In re C.F.C., 156 S.W.3d 422, 426 (Mo.App.2005); A.S., 38 S.W.3d at 481.
Father argues that the trial court's best interest determination was unjust because, although Mother's rights also were terminated, her relationship with Child will continue while that of Father and his extended family will end. Father appears to argue that the trial court was required to value purported fairness to Father and his family over Child's interest in a stable and permanent home. Father's argument is in error. Courts are required to construe Chapter 453 "to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." § 453.005.1; C.M.B.R., 332 S.W.3d at 807. The trial court properly focused on the best interest of Child in attaining a stable and permanent home, as required by Chapter 453.
In addition, there was ample evidence to support the trial court's decision that termination of Father's parental rights was in Child's best interest. Father failed to maintain any regular contact with Child and provided no support to Child, although Father was financially able to do so. Except for partially completing one aspect of Father's treatment plan to be reunited with Child, Father completely failed to comply with any other of its terms. It was Father's volitional conduct in committing additional crimes since Child was born that *352 resulted in his incarceration. Our review of the record demonstrates that the trial court did not abuse its discretion in deciding that it was in Child's best interest to terminate Father's parental rights. See In re A.M.S., 272 S.W.3d 305, 311 (Mo. App.2008); In re M.L.R., 249 S.W.3d 864, 870 (Mo.App.2008); A.S., 38 S.W.3d at 486-87. Point IV is denied.

Point V
In Father's fifth point, he contends the trial court erred in relying on the GAL's written recommendation. Father argues that the recommendation contained hearsay and unduly prejudicial evidence, and referred to Chapter 211 grounds for termination of Father's parental rights. The following facts are relevant to this point.
The GAL filed his written recommendation with the court one week after the trial had concluded. Therein, the GAL stated that "[i]n speaking with my client, she has no memory of [Father], or that he is her father. My client calls [the Adoptive Parents] Mom and Dad, and they appear to be a family unit." Father filed a motion to strike the recommendation, but the record does not reflect that Father ever obtained a ruling on his motion.
On appeal, Father contends the challenged portion of the GAL's recommendation "is not merely a summation of evidence, but rather introduces new facts [that] the Trial Court could not consider without applying the procedural and evidentiary rules to ensure competency and reliability." Father argues that the judgment must be reversed because the trial court improperly relied on this unsworn testimony and inadmissible hearsay.
"To preserve an alleged error in admitting evidence for appellate review, a party must make a timely and valid objection and receive an adverse ruling thereon." Swartz v. Gale Webb Transp. Co., 215 S.W.3d 127, 133 (Mo. banc 2007); State v. Perry, 954 S.W.2d 554, 559 (Mo.App. 1997). Because the record does not show that Father ever obtained any adverse ruling on his motion to strike, the issue is not preserved for appellate review. See Neisler v. Keirsbilck, 307 S.W.3d 193, 197 (Mo. App.2010). As the trial court did not rule on this issue below, we decline to consider it for the first time on appeal. See Belden v. Donohue, 325 S.W.3d 515, 518 (Mo.App. 2010). Point V is denied.
The trial court's judgment is affirmed.
SCOTT, C.J., and FRANCIS, J., Concur.
NOTES
[1] The parental rights of Child's biological mother were terminated by her consent and are not at issue in this appeal. Child has a younger brother, K.J.S., who is not a part of this appeal because Father is not K.J.S.'s biological father.
[2] All references to § 453.040 are to RSMo (2000), and all other references to statutes are to RSMo Cum.Supp. (2008). All references to rules are to Missouri Court Rules 2010.
[3] The Adoptive Parents filed a motion to strike the "Child Welfare Manual" that was included in the appendix to Father's brief. The Adoptive Parents correctly point out that we may not consider this document because it "was not in evidence at trial, was not referred to by any witness at trial, is not a part of the record on appeal, and is not certified or authenticated in any way[.]" See In re Adoption of C.M.B.R., 332 S.W.3d 793, 823 (Mo. banc 2011). The motion to strike is sustained.
[4] In any event, Father waived his argument that the trial court failed to make required statutory findings because Father did not raise that issue in a motion to amend the judgment. Rule 78.07(c); Stuart v. Ford, 292 S.W.3d 508, 517 (Mo.App.2009).
[5] While Father relies on his own testimony that he sent additional letters to Child and paid additional child support through a wage garnishment, the trial court did not find Father credible. That was the court's prerogative. See W.B.L., 681 S.W.2d at 454.