

# Missouri Court of Appeals

### Southern District

### Division One

IN THE INTEREST OF: A.R.T.,      )
     )
R.A.T.,      )
     Respondent-Appellant,      )
     )
v.      )      No. SD34196
     )      Filed: May 17, 2016
GREENE COUNTY JUVENILE OFFICE,    )
     )
     Petitioner-Respondent,      )
     )
and MISSOURI DEPARTMENT      )
OF SOCIAL SERVICES,      )
CHILDREN'S DIVISION,      )
     )
     Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable D. Andrew Hosmer, Associate Circuit Judge

### AFFIRMED

R.A.T. (Appellant) appeals from a judgment terminating his parental rights to daughter, A.R.T. (Child). Appellant is listed as Child's father on her birth certificate, but Appellant is not Child's biological father.[1] The trial court terminated Appellant's

---

[1] The parental rights of Child's biological father and mother also were terminated and are not at issue in this appeal.

parental rights on the statutory grounds of: (1) neglect; and (2) failure to rectify potentially harmful conditions. *See* § 211.447.5(2); § 211.447.5(3).[2] The court also found that termination of Appellant's parental rights was in Child's best interest. *See* § 211.447.6.

Appellant presents five points on appeal. He contends the trial court erred in terminating his parental rights because: (1) "the court lacked jurisdiction to do so, in that Appellant was not a parent"; (2) the petition to terminate parental rights on the ground that Appellant neglected Child "did not contain facts on which the termination was sought"; (3) the finding that Appellant had neglected Child is against the weight of the evidence; (4) the finding that Appellant failed to rectify harmful conditions is against the weight of the evidence; (5) the finding that termination was in Child's best interest is an abuse of discretion. Finding no merit in any of these points, we affirm.

## Standard of Review

A trial court's judgment terminating parental rights "will be affirmed if the record supports at least one ground and supports that termination is in the best interest of the children." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014). This Court reviews a statutory ground for termination by determining whether the ruling is supported by substantial evidence, is against the weight of the evidence, or involves an erroneous application or declaration of the law. *Id*.; *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011). We will not reverse the trial court's decision unless we are left with the firm belief that the decision was wrong. *C.M.B.R.*, 332 S.W.3d at 815. We view "the evidence and permissible inferences drawn from the evidence in the light most

---

[2] All references to statutes are to RSMo Cum. Supp. (2014) unless otherwise indicated.

favorable to the judgment." *Id*. at 801. We defer to the trial court's assessment of credibility. *Id*. at 815. An abuse-of-discretion standard is used to review a trial court's decision that termination of parental rights is in the child's best interest. *Id*. at 816; *see J.A.R.*, 426 S.W.3d at 626.

## Factual and Procedural Background

The Greene County deputy juvenile officer filed a petition seeking to terminate the parental rights of Appellant in October 2014. The trial was conducted in May 2015. Viewed in the light most favorable to the judgment, the following evidence was adduced.

Child was born in September 2012. When Child was a year old, she was taken into protective custody due to concerns about her mother's drug use, homelessness and domestic-violence issues with her then boyfriend, Appellant.[3] Appellant testified that, when Child was taken into protective custody, he knew he was not the biological father.[4] Nevertheless, he viewed himself as Child's father. Appellant signed an affidavit acknowledging paternity of Child because the mother was incarcerated, the biological father was also incarcerated, and no one else would "step up" and take care of Child. Appellant was named as Child's father on an amended birth certificate issued in October 2013.

A treatment plan for Appellant was ordered by the court to rectify the issues that brought Child into protective custody. The plan addressed Appellant's issues, which included: (1) substance abuse; (2) his mental health; (3) lack of stable housing; (4) lack of employment; and (5) significant involvement with law enforcement regarding

---

[3] At some point after Child came into care, mother and Appellant married.

[4] The biological father of Child is D.E.R., II, who submitted to paternity testing. The results showed a 99.9% probability of paternity.

3

substance abuse and various assaults. Among the services offered, Appellant agreed to obtain a drug assessment, follow all recommendations of that assessment and submit to random drug testing. Appellant also agreed to complete a psychological evaluation, attend therapy and address his domestic violence and anger issues. Appellant further agreed to provide proof of completion of all programs and services provided. Appellant's responsibilities included an obligation to provide a safe living environment for Child and a legal means for her support.

Lisa Lowrance (Lowrance) was the Children's Division case manager who worked on Child's case from September 2013 through December 2014. Lowrance created Appellant's treatment plan. She testified that Appellant did not achieve and maintain sobriety. She never received a report that Appellant had been in treatment or had completed treatment. Appellant did not make any significant progress on rectifying the issues addressed in his treatment plan. Lowrance testified that, when Child's case opened, Appellant had two visits with Child. Appellant's last visit with Child occurred on October 28, 2013. He did not show up for a scheduled visit with Child one week later. Appellant did not have any contact with Child for about a year until he asked for visitation in the fall of 2014. Lowrance recommended that termination of Appellant's parental rights would be in Child's best interest.

Lindsay Crosswhite (Crosswhite) was the case manager from December 2014 to the time of trial. Crosswhite testified that Appellant tested positive on a hair follicle drug test in April 2015 for amphetamines and methamphetamine. Appellant had not been able to achieve and maintain sobriety for any extended period of time. Since Crosswhite had been the case manager, Appellant had not had a stable, suitable, safe home for Child. Appellant had not paid any money for the cost of the care and maintenance of Child

4

while she had been in foster care. Appellant similarly did not provide any in-kind items for the support of Child. Crosswhite did not know of any additional services which could be offered to Appellant to bring about a lasting parental adjustment so Child could be returned to him within an ascertainable period of time. In March 2015, Crosswhite and other members of the family support team encouraged Appellant to get help for his mental health issues. Crosswhite was aware at that time that Appellant recently started to participate in the Greene County Mental Health Court, pursuant to court orders in criminal cases. Appellant was previously diagnosed as bipolar schizoaffective in 2006 while in the Department of Corrections. Crosswhite also recommended that Appellant's parental rights be terminated due to lack of progress on his treatment plan.

Appellant testified that he completed six substance abuse treatment programs back to back. Upon completion, however, he told each treatment center that he was not ready to be released back to the streets because he continued to be a victim of his substance abuse. Appellant admitted that he and Child's mother stopped speaking to each other at one time because they disagreed on issues of where and how to live. Appellant wanted to be a drug dealer, and the mother wanted to be a mother. Appellant also admitted that, since Child had been in care, he had neither been employed nor had a stable home. Appellant receives monthly social security disability benefits.

The Guardian Ad Litem (GAL) likewise recommended that Appellant's parental rights be terminated because Child had been in care for a long time. The GAL opined that termination of Appellant's parental rights would be in Child's best interest.

Thereafter, the trial court entered its judgment terminating Appellant's parental rights. This appeal followed. Additional facts will be included below as we discuss Appellant's five points of error.

5

## Discussion and Decision

### *Point 1*

Appellant's first point contends the trial court misapplied the law in terminating his parental rights "because the court lacked jurisdiction to do so, in that Appellant was not a parent." This argument, which is being raised for the first time on appeal, has no merit.

"Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). Article V of the Missouri Constitution governs subject matter jurisdiction and grants circuit courts "original jurisdiction over *all* cases and matters, civil and criminal." Mo. CONST. art. V, § 14 (emphasis added); *J.C.W.*, 275 S.W.3d at 252. Because this is a civil case, the trial court had constitutionally vested subject matter jurisdiction over the matters of paternity and child custody. *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. banc 2010); *DeWitt v. Lechuga*, 393 S.W.3d 113, 116 (Mo. App. 2013). Appellant did not challenge the trial court's exercise of personal jurisdiction over him, and he appeared at trial. *See C.J.G. v. Missouri Dept. of Soc. Services*, 219 S.W.3d 244, 248 (Mo. banc 2007) (personal jurisdiction may be waived when a party makes no mention or pleading on the issue of personal jurisdiction, but otherwise subjects himself to the jurisdiction of the court). Consequently, the trial court did not lack either subject matter or personal jurisdiction in this matter.

What Appellant is essentially arguing is that the court lacked authority to terminate his parental rights because he was not a "parent" as defined in § 211.442, which provides:

6

**"Parent"**, a biological parent or parents of a child, as well as, the husband of a natural mother at the time the child was conceived, or a parent or parents of a child by adoption, including both the mother and the putative father of a child. *The putative father of a child shall have no legal relationship unless he*, prior to the entry of a decree under sections 211.442 to 211.487, *has acknowledged the child as his own by affirmatively asserting his paternity*.

§ 211.442(3) RSMo (2000) (emphasis added); *see* § 210.823.1 RSMo (2000) (signed acknowledgement of paternity "shall be considered a legal finding of paternity"); *see also* § 211.453.2(1) RSMo (2000) (persons who shall be summoned in termination of parental rights case includes putative father who has acknowledged the child as his own by affirmatively asserting his paternity); ***In re Baby Girl \_\_\_\_***, 850 S.W.2d 64, 67 n.3 (Mo. banc 1993) (putative father is a necessary party with rights of his own); ***In Interest of W.F.J.***, 648 S.W.2d 210, 212 n.1 (Mo. App. 1983) (service on putative father who acknowledged child is essential to the validity of the judgment).

Here, the evidence established that Appellant: (1) signed an acknowledgement of paternity; (2) is named as the father on Child's birth certificate; and (3) testified at trial that he viewed himself as Child's father. As a putative father who had affirmatively asserted his paternity, Appellant was properly included as a parent and necessary party to the termination proceedings in this case. *See **Baby Girl***, 850 S.W.2d at 67 n.3; ***W.F.J.***, 648 S.W.2d at 212 n.1; §§ 211.442(3), 210.823.1, 211.453.2(1) RSMo (2000). Moreover, Appellant is taking a position on appeal that is completely contrary to the position he took at trial. It is well settled that this Court will not permit a party to: (1) take a position on a matter that is directly contrary to, or inconsistent with, one previously assumed; or (2) complain on appeal about an alleged error in which he joined, acquiesced or invited by his conduct at trial. *See **Klineline v. Klineline***, 481 S.W.3d 551, 554 (Mo.

App. 2015); *Ard v. Shannon Cty. Comm'n*, 424 S.W.3d 468, 476 (Mo. App. 2014). For all these reasons, Point 1 is denied.

*Points 2, 3 and 4*

Appellant's next three points challenge the grounds for termination. For ease of analysis, we will address Appellant's points out of order.

In Point 4, Appellant contends the trial court erred in terminating his parental rights on the ground that he failed to rectify the conditions that led to Child coming into care. *See* § 211.447.5(3). The following facts are relevant to this point.

With respect to the failure-to-rectify ground for termination, the court made the following findings relevant to Appellant, whom the court described as "legal father" and one of Child's parents:

> The minor child has been under the jurisdiction of the Court for more than one year and the conditions that led to the assumption of jurisdiction or conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions can be remedied at an early date so that the child could be returned to the custody of any of these parents in the near future. Those conditions include: continuing neglect by the parents, the parents' continued substance abuse, the inability and/or unwillingness of the parents to provide the child with appropriate care and parenting … and, the parents' inability to maintain stable housing and stable employment. Continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In terminating parental rights based on this ground, the Court considered and makes findings on the following factors in compliance with Section 211.447.5(3)(a)-(d) RSMo.:
>
> [a] The terms of a social services contract entered into between the parent and the Children's Division and the extent to which the parties have made progress in complying with those terms: The evidence presented was that … the legal father [was] subject to a court-ordered treatment plan, but [he] failed to make any significant progress on the terms of [his] court-ordered treatment plan[.]
> ….
> The legal father has not provided any confirmation that he has completed substance abuse treatment. The legal father has not completed a psychological evaluation nor has he verified that he completed

8

successfully individual counseling or anger management. The legal father has been incarcerated on two occasions in the Greene County Missouri Jail: from August 7, 2014 to August 31, 2014; and, from October 22, 2014 to December 2014. Soon after his release from jail in December, he used illegal drugs with the mother. The legal father has not obtained and maintained lawful, stable employment since the child came into care. He also has substantial mental issues and has been diagnosed as Bi-Polar and Schizophrenic.

Notwithstanding that the legal father's name is on the birth certificate and although he states he is now married to the mother, it is conclusively determined by this Court based on clear, cogent and convincing evidence that he, [Appellant], is not the biological father of this child. This determination is based upon the paternity test results that were admitted in evidence and an admission by [Appellant] in Court that he knows he is not the biological father of [Child].

[b] The success or failure of the efforts of the juvenile officer, the Children's Division, or any other agency to aid the parent on a continuing basis in adjusting the parent's circumstances or conduct to provide a proper home for the child: The evidence presented established that the parents were offered extensive services after the child was taken into care. … The legal father [has] not addressed successfully [his] substance abuse issues. Based upon all of the evidence, the Court concludes that these parents do not want to or cannot change their lifestyles and circumstances so they can provide a proper, appropriate and safe home environment for the child.
….
 [d] Whether or not a parent suffers from a chemical dependency which would prevent the parent from consistently providing the necessary care, custody and control of the minor child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control: evidence was presented which established that … the legal father [has] chemical dependencies and [he] continued to use controlled substances and/or abuse controlled substances throughout the case when [he was] not incarcerated in jail. There was no evidence presented that these parents have completed a substance abuse program successfully, despite having engaged in drug rehabilitation programs. The evidence was that without treatment, the parents are unable to appropriately provide for the minor child's care, custody and control. … Based upon all of the evidence, the Court concludes that these parents do not genuinely want to or cannot stop using controlled substances.

§ 211.447.5(3)(a)-(d).[5] The court also found that these acts "had a negative impact on the child" and that the "parents' failure to rectify the circumstances that caused the child to come into care, have deprived the child of parental relationships and financial support." Further, the court found that:

> There is significant likelihood of future harm to the child if parental rights are not terminated because of the continuing neglect of the child by the parents, the parents' continued substance abuse, … the parents' failure to rectify the circumstances that caused the child to come into care, and the parents' failure to demonstrate an ability or desire to provide the child with appropriate care and parenting.

Point 4 contends the above findings were "against the weight of the evidence" because "the evidence did not establish that Appellant had failed to rectify the conditions which led to [Child] coming into care." We disagree.

"[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." **J.A.R.**, 426 S.W.3d at 630. Consequently, an against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

---

[5] The court's finding as to subsection (c) concerning a mental condition applied only to mother. *See* § 211.447.5(3)(c).

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. 2010).

With respect to step three, Appellant identifies evidence favorable to him that primarily occurred within one to two months prior to the May 2015 trial. This includes evidence that Appellant was: (1) participating in Greene County Mental Health Court, beginning in March 2015; (2) taking medication to treat his mental health issues; (3) complying with drug testing, the most recent result of which had been clean; and (4) no longer homeless and living at a recovery facility for men. In step four, Appellant argues that this evidence shows he rectified the conditions that led to Child coming into care. The trial court, however, was obviously not persuaded by this recent evidence. Appellant tested positive in April 2015 for amphetamines and methamphetamine and had a history of only limited periods of sobriety. Although Appellant testified that he secured housing for himself, he admitted that he has never secured suitable, safe housing for Child. Both Lowrance and Crosswhite testified that Appellant did not make any significant progress on rectifying the issues addressed in his treatment plan over the nearly twenty-month period Child had been in care. *See, e.g.*, *In Interest of S.D.*, 472 S.W.3d 572, 577 (Mo. App. 2015) (despite parent's present behaviors, trial court did not err in relying on parent's past behaviors in determining that parent failed to rectify conditions that brought child into care). Thus, Appellant failed to demonstrate why the evidence favorable to the judgment, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief. *See Houston*, 317 S.W.3d at 187. The trial court's findings with respect to the failure-to-rectify ground for termination are therefore not against the weight of the evidence. Point 4 is denied. Because the failure-to-rectify statutory ground is sufficient

11

to support termination, we do not address Points 2 and 3, which are moot.  *See J.A.R.*, 426 S.W.3d at 630.

*Point 5*

In Point 5, Appellant contends the trial court abused its discretion in finding that termination of Appellant's parental rights was in Child's best interest.  *See* § 211.447.6.  "Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *In re A.S.*, 38 S.W.3d 478, 486 (Mo. App. 2001); *In re H.N.S.*, 342 S.W.3d 344, 351 (Mo. App. 2011).  The determination of the child's best interest is an ultimate conclusion for the trial court based on the totality of the circumstances.  *H.N.S.*, 342 S.W.3d at 351.  Section 211.447.7 provides the trial court with seven factors to consider when determining whether termination of the parent-child relationship is in the best interest of a child.  § 211.447.7(1)-(7); *In re C.A.M.*, 282 S.W.3d 398, 409 (Mo. App. 2009).  "There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination."  *C.A.M.*, 282 S.W.3d at 409; *In re A.L.M.*, 354 S.W.3d 645, 655-56 (Mo. App. 2011).  In addition, it is the trial court's duty to weigh the evidence presented relating to best interest, and "we will not reweigh that evidence."  *H.N.S.*, 342 S.W.3d at 351.  "We also defer to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence."  *Id*.  The following facts are relevant to this point.

The trial court made detailed findings with respect to Child's best interest.  *See* § 211.447.7(1)-(7).  As to Appellant, the court found:

12

a. The emotional ties to the birth parent: …The child does not have emotional ties to the legal father[.]

b. The extent to which the parent has maintained regular visitation or other contact with the child: …The legal father has not visited the child since October 2013[.]

c. The extent of payment by a parent for the cost of care and maintenance of the minor child when financially able to do so including the time that the minor child was in the custody of the Division or other child-placing agency: The evidence presented established that the parents have not provided any financial support for the child. … The legal father and present husband of mother has Social Security Disability benefits for mental health issues and has not had a home since the child has been under the jurisdiction of this Court. The evidence presented established that the parents have had at times the ability to provide at least a minimal amount for the financial support of the minor child but have not done so since the child has been in care.

d. Additional services would not likely bring about a lasting parental adjustment so as to enable a return of the child to a parent within an ascertainable period of time: The evidence presented established that the parents failed to follow through significantly or consistently with any services provided to them. The case manager testified that there were no additional services which could be provided to the parents to assist them in bringing about a lasting parental adjustment so the child could be returned to the [sic] any of these parents within an ascertainable period of time. Based upon all of the evidence presented, the Court concludes that there is little likelihood that within an ascertainable period of time the parents would complete services to the point that the parents would be able to resume the care, custody and control of the child. The parents have continued to engage in irresponsible behavior and to make poor decisions ever since the child came into care.

e. The parents have demonstrated a disinterest in or lack of commitment to the child: The evidence presented established that the parents demonstrated a disinterest in the child by failing to provide financial support for the child and by failing to put the child's needs first. The parents' refusal to make significant progress on their treatment plans and the parents' failure to achieve consistent sobriety and to become law abiding citizens demonstrates the parents' lack of commitment to the child.

*See* § 211.447.7(1)-(5).[6]

Appellant's point argues these best interest findings were an abuse of discretion because "Appellant had engaged in treatment to address his mental health and drug issues." We disagree.

In support of his argument, Appellant again relies only on his evidence of recent treatment, which the trial court obviously did not find persuasive. *See, e.g.*, *J.A.R.*, 426 S.W.3d at 632 n.14 ("[i]t seems obvious, from the findings and conclusions contained in the judgment, that the circuit court put little or no stock in various factual assertions made by [parent]"). In addition, Appellant's point challenges only the fourth and fifth findings involving additional services and his commitment to Child. *See* § 211.447.7(4)-(5). Appellant fails to challenge the other best-interest findings, which are amply supported by the evidence. *See* § 211.447.7(1)-(3); *C.A.M.*, 282 S.W.3d at 409 (no minimum negative factors necessary for termination); *see, e.g.*, ***In Interest of M.T.E.H.***, 468 S.W.3d 383, 398 (Mo. App. 2015). Here, we must take it that: (1) Appellant last visited Child in October 2013, only a month after she came into care; (2) given minimal contact with Appellant, Child does not have emotional ties to him; and (3) Appellant did not provide any financial or in-kind support for Child, although he was receiving monthly disability and had the ability to do so. Furthermore, the GAL recommended that termination of Appellant's parental rights was in Child's best interest, noting Child had been in care for a long time. At the time of trial, Child had been in care nearly twenty

---

[6]    With respect to the sixth and seventh factors, the court found "[n]o such evidence was presented." *See* § 211.447.7(6) (concerning whether a parent has a felony conviction depriving the child of a stable home for a period of years); § 211.447.7(7) (concerning whether a parent knows or should have known about acts subjecting the child to risk of harm).

months.  "Every child is entitled to a permanent and stable home."  *In re Z.L.R.*, 347 S.W.3d 601, 608 (Mo. App. 2011); *In re I.R.S.*, 445 S.W.3d 616, 623 (Mo. App. 2014). Thus, the trial court's conclusion that termination was in Child's best interest was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *A.S.*, 38 S.W.3d at 486.  Finding no abuse of discretion, Point 5 is denied.

After a thorough review of the record, we are not left with a firm belief that the trial court's decision is wrong.  *See C.M.B.R.*, 332 S.W.3d at 815.  The record supports the failure-to-rectify ground and that termination is in Child's best interest.  *See J.A.R.*, 426 S.W.3d at 632-33.  We therefore affirm the judgment terminating Appellant's parental rights to Child.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

MARY W. SHEFFIELD, C.J. – CONCUR