

# Missouri Court of Appeals
## Southern District

### In Division

IN THE INTEREST OF: )
N.D.P.H. and Z.L.P.H, )
Minor children under seventeen )
years of age, )
  )
K.E.H., )
  )
        Respondent-Appellant, )
  )
v. ) Nos. SD37993 & SD37994
  ) Filed: October 5, 2023
GREENE COUNTY JUVENILE )
OFFICER, )
  )
        Petitioner-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Joseph Schoeberl, Senior Judge

### **AFFIRMED**

K.E.H. (Father) appeals from judgments terminating his parental rights to his two children: N.D.P.H. and Z.L.P.H. (hereinafter referred to collectively as the Children). The trial court terminated Father's parental rights on the statutory grounds of: (1) neglect; and (2) failure to rectify potentially harmful conditions. *See* § 211.447.5(2); § 211.447.5(3).[1]

---

[1] All statutory references are to RSMo Cum. Supp. (2021) unless otherwise indicated. All rule references are to Missouri Court Rules (2023).

The court further found that termination of Father's parental rights was in each child's best interest. *See* § 211.447.6. In Father's two points on appeal, he challenges only the court's best-interest determination.[2] Father contends the court: (1) abused its discretion by finding that termination was in the Children's best interests; and (2) plainly erred by failing to "inquire as to the wishes of the Children as to whether they wanted Father's parental rights terminated." Finding no merit in either point, we affirm.

## Standard of Review

A trial court's judgment terminating parental rights "will be affirmed if the record supports at least one ground and supports that termination is in the best interest of the children." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014); *see In the Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017). We review a statutory ground for termination by determining whether the ruling is supported by substantial evidence, is against the weight of the evidence, or involves an erroneous application or declaration of the law. *J.A.R.*, 426 S.W.3d at 626; *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011). The judgment will be reversed only if we are left with a firm belief that the judgment is wrong. *C.M.B.R.*, 332 S.W.3d at 815. We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Id*. at 801. We defer to the trial court's assessment of credibility. *Id*. at 815. An abuse-of-discretion standard is used to review a trial court's decision that termination of parental rights is in the child's best interest. *Id*. at 816; *J.A.R.*, 426 S.W.3d at 626. The trial court's judgment is presumed valid,

---

[2] Because Father does not challenge the findings regarding the statutory grounds for termination, we only review that part of the judgment which found that termination of Father's parental rights was in the Children's best interests. *See In re A.Y.M.*, 154 S.W.3d 412, 414 n.2 (Mo. App. 2004).

2

and the burden is on the appellant to demonstrate that it is incorrect. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. 2010).

## Factual and Procedural Background

We limit our recitation of the facts to those necessary to resolve Father's points on appeal. The Children were born in April 2019 (Z.L.P.H.) and March 2021 (N.D.P.H.). In December 2020, when Z.L.P.H. was 20 months old and in Father's care, Z.L.P.H. was transported by ambulance to Cox Medical Center for methamphetamine intoxication. She tested positive for methamphetamine and amphetamine. Upon further investigation by the Children's Division (Division), Father admitted to using methamphetamine two days before the incident. Father later admitted to law enforcement to using methamphetamine the night before, with numerous other users in the home where Z.L.P.H. was in Father's care. Due to safety concerns about returning Z.L.P.H. to Father's care, the Division placed Z.L.P.H. with the paternal grandmother (Grandmother). Father agreed to participate in services offered by the Division, but he did not do so.

In March 2021, when N.D.P.H. was born, the Division received a referral for a newborn crisis assessment based on concerns about lack of prenatal care and drug use. Both the Children's mother (Mother) and Father were homeless. With respect to Father, concerns included: (1) his drug use; (2) obtaining safe and stable housing; (3) employment; and (4) domestic violence between Father and Mother. Further, placement of Z.L.P.H. was also becoming "volatile" as Father was participating in Grandmother's household, and they were not able to get along.

On March 17, 2021, both Z.L.P.H. and N.D.P.H. were taken into protective custody by the Division. The Children were placed together in a foster home. A treatment plan addressing Father's issues was prepared by the Division.

3

In April 2022, petitions were filed to terminate Father's parental rights to each of the Children. Trial in the matter was held in February 2023. At that time, the Children were one and three years of age. Witnesses included a police officer and two Division investigators, who testified to the above-described events that led to the Children coming into care. The two caseworkers who managed the Children's case testified, along with two other workers who supervised the Children's visitation with Father. The guardian ad litem (GAL) also participated at trial on behalf of the Children. Lastly, Father testified on his own behalf. The following is a summary of the testimony.

Shelly Anderson was the Children's caseworker for the first six months, from March to September 2021. At that time, Father was involved in Family Treatment Court, but he did not follow through with substance abuse treatment. Similarly, despite housing and employment referrals, Father did not obtain stable housing or employment. Father's visitation with the Children was limited to supervised visits. Father was not consistent with those visits.

Emaly Keller (Keller) took over as caseworker from September 2021 until the time of the February 2023 trial. She reported that Father was discharged from Family Treatment Court for failed drug tests. He had taken only six out of 50 required urinalysis tests; five were positive for THC, and one was positive for methamphetamine. Father's hair follicle tests were positive for methamphetamine on: July 21, 2022 and September 23, 2022, and on January 20, 2023, which was less than a month before trial. Father denied using, but he admitted that he had been around people who were smoking methamphetamine.

According to Keller, during her tenure as caseworker, Father did not achieve and maintain sobriety. Similarly, despite several referrals, Father did not participate in counseling services, any domestic violence education, programs to improve his coping skills,

4

or classes on anger management. In addition, Father did not obtain appropriate housing or report consistent employment. Father reported working, but provided only one pay stub in April or May of 2022, and one other pay stub the morning of trial. Father did provide some child support and in-kind support during visits, but he did not meet the Children's financial needs.

With respect to visitation, Father was inconsistent until a few months before trial. Workers supervising visits canceled services due to his lack of consistency and failure to call ahead to cancel. Father's visits were eventually moved from two days a week to one day a week, and they remained supervised. During the last five months before trial, Father's visits were consistent, and the Children appeared to enjoy the visits and to have a bond with Father.

At the end of Keller's testimony, she recommended that termination of Father's parental rights was in the Children's best interests. Keller opined that there were no additional services to which she could refer Father that would enable Father to reunify with the Children in the near future. Father had nearly two years to engage in services and failed to avail himself of the services provided. She also reported that the Children's placement offered the possibility of permanency for them.

The GAL also recommended that termination of Father's parental rights was in the Children's best interests. The Children came into care because of methamphetamine, and 23 months later, methamphetamine was still an issue. The GAL acknowledged that the Children were bonded with Father, but emphasized that they were also bonded with their foster parents and deserved permanency.

The trial court entered its judgments terminating Father's parental rights based on all four factors pursuant to both grounds of: (1) neglect; and (2) failure to rectify potentially

5

harmful conditions. *See* § 211.447.5(2)(a)-(d); § 211.447(3)(a)-(d). The court also made several statutory findings supporting its decision that termination was in the Children's best interests. *See* § 211.447.7. Mother consented to termination and the court terminated her parental rights in the same judgments. This appeal by Father followed. Additional facts will be included below as we address Father's two points on appeal.

**Discussion and Decision**

*Point 1*

Father's first point challenges the trial court's best-interest determination. An abuse-of-discretion standard is used to review a trial court's decision that termination of parental rights is in a child's best interest. **C.M.B.R.**, 332 S.W.3d at 816; *see **J.A.R.***, 426 S.W.3d at 626. "Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." **In re A.S.**, 38 S.W.3d 478, 486 (Mo. App. 2001); **In Interest of A.R.T.**, 496 S.W.3d 610, 618 (Mo. App. 2016). The determination of a child's best interest is an ultimate conclusion for the trial court based on the totality of the circumstances. **A.R.T.**, 496 S.W.3d at 618. There are seven factors for a trial court to consider when determining whether termination of the parent-child relationship is in the best interest of a child. §§ 211.447.7(1)-(7); *see **In re C.A.M.***, 282 S.W.3d 398, 409 (Mo. App. 2009). There is no requirement, by statute or otherwise, that all seven of these factors must be negated before termination can take place. **In re A.L.M.**, 354 S.W.3d 645, 655-56 (Mo. App. 2011); **C.A.M.**, 282 S.W.3d at 409. "The presence of a single factor could support the determination of a child's best interest when it is reviewed in the totality of the circumstances[,] and that finding is a subjective assessment made by the trial court that is not reweighed by this Court." **Interest of M.K.S.**, 612 S.W.3d 260, 262 (Mo. App.

6

2020); *see also* ***A.R.T.***, 496 S.W.3d at 618 (it is the trial court's duty to weigh the evidence presented relating to best interest, and an appellate court will not reweigh that evidence).

Here, the trial court made detailed findings with respect to the Children's best interests. *See* § 211.447.6; § 211.447.7(1)-(7). With respect to each child, the trial court made findings on the following six factors, the first three of which include findings favorable to Father, while the other three factors include findings favoring termination:

> [1] **The emotional ties to the birth parent**: The evidence established that the child and sibling have a bond to the father and enjoy seeing him at visits.
>
> [2] **The extent to which the parent has maintained regular visitation or other contact with the child**: The father was very inconsistent with visits until a few months before hearing. He had several parent aides cancel services due to his lack of consistency and failure to call ahead to cancel. At one point the father's visits were moved from two days a week to one day a week due to the father's work schedule. At the time of trial, the father was being far more consistent with visits.
>
> [3] **The extent of payment by parent for the cost of care and maintenance of the minor child when financially able to do so including the time that the minor child was in the custody of the Division or other child-placing agency**: The father has provided in-kind items at visits with the children on most occasions. The father was ordered to pay child support [and did pay some support.[3]]
>
> [4] **Additional services would not be likely to bring about a lasting parental adjustment so as to enable a return of the child to a parent within an ascertainable period of time**: The evidence presented established that no additional services can be provided to the father that have not already been referred to the father. For the majority of the time the minor child has been in custody the father failed to participate in services and it was only recently that he started beginning the follow up for services that were referred years earlier. If the father were to continue his involvement with those services and become engaged in drug treatment and individual counseling, he likely would make progress toward lasting parental adjustment, but there is no way to ascertain how long that adjustment would take. So far the father has had [at least] 23 months of time to make adjustments and he has made very few; he now says he is committed to change, but there is little more than

---

[3] Father was ordered to pay child support in the amount of $21 per month beginning in November 2021. At the time of the February 2023 trial, Father owed arrearages of $55.40.

7

his words to reflect his commitment. … The minor child deserves to have permanency and should not have to continue to wait for the father.[4]

[5] **The father has also shown a disinterest for and lack of commitment to the minor child by continuing to have regular involvement with people that use methamphetamine and by not being honest with his own use and/or exposure**. In addition, the father seems to have chosen his ongoing relationship with the mother over the needs of the minor child. The father acknowledges that the mother continues to struggle with substance abuse and lack of stability and yet he has allowed the mother to stay with him in his sober living facility, which in turns [sic] puts his [sobriety] and [the sobriety of the people he resides with] in danger. The father acknowledged that when he is out and about he often encounters people that are not good influences and whom would not be appropriate to have the children around. The father has not fully committed to changing his lifestyle such that he would put the needs of the children first and he does not seem to understand how those changes would need to happen before the children could be safe with the father without other supervision.
….

[7] **Deliberate acts of the parent or acts of another, of which the parent knew or should have known, that subjected the child to a substantial risk of physical or mental harm**: The father was responsible for the care of the [older child] when [she] was a year and a half old, [and] while that child was in his care, the child was exposed to methamphetamine and had to be hospitalized.

*See* § 211.447.7(1)-(5) and (7) (bold emphasis added).[5] The court also found that "continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." Further, the "inability of [Father] to

---

[4] The trial court also made a separate, different finding as to when each child came into care. With respect to Z.L.P.H., the court found that because she was removed "when she was a year and a half old and is now almost 4, she likely doesn't remember living with her father as she has spent more of her life living with her placement than she had with her father before she was removed." With respect to N.D.P.H., the court found he "was removed at birth and has now spent the first two years of his life with his placement, [which] is the only place he has ever lived."

[5] With respect to the sixth factor, which involves a parent's conviction for a felony offense, the trial court found "[n]o evidence was presented that the father has such a conviction." *See* § 211.447.7(6).

provide proper care, custody, and control for the minor child is potentially harmful to the child should the child be placed with him."

Father's point argues the trial court erred in making these best-interest findings because: (1) "there was evidence that the Children were bonded to Father and looked forward to visits with him"; (2) "there was evidence that Father provided in-kind items of support and financial support for the Children"; (3) "there was no evidence that preservation of the legal familial relationship between the Children and Father would be detrimental to the Children"; and (4) "termination of parental rights would deprive the Children of their future right to receive affiliation and a relationship with Father[,] financial support [and] a potential inheritance[.]" According to Father, "[t]o completely sever the parent-child relationship … was not supported by substantial evidence, was against the logic of the circumstances that were before the trial court, and thereby constitutes an abuse of discretion." We disagree.

In support of Father's point, he initially relies on findings favorable to him included in the first three factors – his bond with the Children, consistent visitation a few months before trial, and provision of some in-kind and monetary support.[6] Father essentially argues these factors should carry more weight than the other three, and that this Court should reweigh the best-interest factors in this case. However, this we cannot do. As noted above, it is well settled that "the trial court's best interest determination is a subjective assessment that cannot be reweighed by this Court." *Interest of H.M.W.*, 664 S.W.3d 763, 773 (Mo.

---

[6] We note that the second and third findings are not entirely in Father's favor. In the second finding, the trial court recognized Father's visitation was inconsistent for all but the last few months before trial. The third finding also recognized that Father only paid some child support.

9

App. 2023); *see **A.R.T.***, 496 S.W.3d at 618 (it is the trial court's duty to weigh the evidence related to best interest, and this Court will not reweigh that evidence).

Further, the findings on the last three factors favoring termination are sufficient to support termination. *See **Interest of M.K.S.***, 612 S.W.3d 260, 262 (Mo. App. 2020) (there is no requirement that a certain number of factors be found against parent before termination can take place). "The presence of a single factor could support the determination of a child's best interest when it is reviewed in the totality of the circumstances[.]" ***Id***. Here, Father does not challenge any of the findings favoring termination, and our review of the record shows ample evidence to support each of those findings.

Father's point goes on to argue that the trial court should have considered factors other than those specified in § 211.447.7(1)-(7), but the court was not required to do so. Father asserts "there was no evidence" as to: (1) the Children's future rights to receive affiliation and a relationship with Father, and financial support and inheritance from Father or his family; or (2) whether preservation of the legal familial relationship would be detrimental to the Children. Father relies on ***In re C.M.H.***, 408 S.W.3d 805, 819 (Mo. App. 2013), discussing similar factors, but that case is factually distinguishable from the case at bar. In ***C.M.H.***, this Court reversed the trial court's decision that termination of the mother's parental rights was in the best interests of her two children based on "rare circumstances" present in that case. ***Id***. at 808. There, the children were bonded to the mother, who provided some in-kind and monetary support, but the parental rights of the children's fathers were *not* terminated, and there was no evidence that the continuation of the mother's legal familial relationship with the children would be in some way detrimental to the children. ***Id***. at 815-19. Those rare circumstances do not exist in the case at bar.

10

Here, Mother consented to termination, and her rights were terminated along with Father's parental rights. In addition, there was evidence that continuation of Father's legal familial relationship with the Children would in some way be detrimental to them. Father's last failed drug test was less than a month before trial, and he admitted that he is often around other users – the same dangerous situation he created when Z.L.P.H. had to be hospitalized for methamphetamine intoxication. Further, there was evidence that the Children were bonded with their foster parents, and, as the court found, continuation of Father's parent-child relationship would greatly diminish the Children's prospects for early integration into a stable and permanent home.[7]

Finally, at the time of trial, the Children had been in care almost two years. The trial court recognized that the Children deserve permanency and should not have to continue to wait for Father. The court's finding, with respect to each child, concerning whether additional services would bring about lasting change is worth repeating here:

> For the majority of the time the minor child has been in custody the father failed to participate in services and it was only recently that he started beginning the follow up for services that were referred years earlier. If the father were to continue his involvement with those services and become engaged in drug treatment and individual counseling, he likely would make progress toward lasting parental adjustment, but there is no way to ascertain how long that adjustment would take. So far the father has had [at least] 23 months of time to make adjustments and he has made very few; he now says he is committed to change, but there is little more than his words to reflect his commitment. … The minor child deserves to have permanency and should not have to continue to wait for the father.

---

[7] Father's point also asserts that "there was no evidence as to what the Children's wishes were as to whether Father's parental rights should be terminated[,]" but that assertion is not true. Generally, a GAL is tasked with ascertaining "the child's wishes, feelings, attachments[.]" § 211.462.3(2) RSMo (2016). Given the Children's ages of one and three at the time of trial, the GAL dutifully reported on their attachments. As evidenced by the trial court's findings, the court was well aware of the Children's bond with Father.

11

"Every child is entitled to a permanent and stable home." ***In re Z.L.R.***, 347 S.W.3d 601, 608 (Mo. App. 2011); ***In re I.R.S.***, 445 S.W.3d 616, 623 (Mo. App. 2014).

For all of these reasons, the trial court's decision that termination was in the Children's best interests was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***A.S.***, 38 S.W.3d at 486. Finding no abuse of discretion, Point 1 is denied.

*Point 2*

Father's second point contends the trial court "erroneously applied the law" by failing to "inquire as to the wishes of the Children as to whether they wanted Father's parental rights terminated." Father recognizes the claim of error is not preserved because he did not bring this issue to the trial court's attention, and therefore, he requests plain error review.

Pursuant to Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.*; *see Interest of J.C.S.*, 658 S.W.3d 260, 264-65 (Mo. App. 2023); *see also **State v. Brandolese***, 601 S.W.3d 519, 531 (Mo. banc 2020). A plain error is evident, obvious and clear, and must result in a manifest injustice or miscarriage of justice. ***J.C.S.***, 658 S.W.3d at 265. Plain error review "rarely is granted in civil cases." ***Mayes v. Saint Luke's Hosp. of Kansas City***, 430 S.W.3d 260, 269 (Mo. banc 2014); *see also **Terpstra v. State***, 565 S.W.3d 229, 248 (Mo. App. 2019) (reversal for plain error in civil cases is rare and only appropriate when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case).

12

Father cites no authority requiring the trial court to inquire into the Children's wishes at their young age, and we are aware of none. Therefore, Father has failed to establish facially substantial grounds to believe the court committed an evident, obvious and clear error that resulted in a manifest injustice. *See **State v. Vandergrift***, 669 S.W.3d 282, 296 (Mo. banc 2023); ***J.C.S.***, 658 S.W.3d at 265. Accordingly, we decline to review Point 2 for plain error.

The judgments terminating Father's parental rights to each child are affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCUR

BECKY J.W. BORTHWICK, J. – CONCUR

13