

# Missouri Court of Appeals

## Southern District

## Division Two

IN THE INTEREST OF:                          )
J.B.L., a child under seventeen years of age. )
                                             )
GREENE COUNTY JUVENILE OFFICE,               )
                                             )
       Petitioner-Respondent,           )
                                             )
    vs.                                     )    No. SD33979
                                             )
S.J.C.,                                      )    **Filed:  January 25, 2016**
                                             )
       Respondent-Appellant.             )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable D. Andrew Hosmer, Associate Circuit Judge

**<u>AFFIRMED</u>**

S.J.C. ("Mother"), the mother of J.B.L. ("Child"), brings this appeal from a judgment terminating her parental rights to Child. The trial court found that Mother had abandoned and neglected Child. Mother brings seven points on appeal, challenging each of the grounds that the trial court found to support the termination and challenging that it was in the best interest of Child to have Mother's parental rights terminated. We find no error and affirm the judgment.

**ABANDONMENT**

Mother's first four points claim the trial court erred in terminating her rights on the grounds of abandonment because the finding (1) was unsupported by the evidence, (2) was against the weight of the evidence, (3) failed to appropriately apply the law that Mother had "repented" from any abandonment, and (4) failed to properly weigh the evidence of Mother's repentance from the abandonment. Mother admirably sets forth the challenged proposition, that Child was abandoned, and the favorable evidence to that proposition.[1] She then attempts to explain why the favorable evidence lacks probative value. Unfortunately for Mother, under these facts, she is not able to rebut the probative value of the evidence.

Abandonment is:

"a voluntary and intentional relinquishment of the custody of the child to another, with the intent to never again claim the rights of a parent or perform the duties of a parent; or . . . an intentional withholding from the child, without just cause or excuse, by the parent, of [her] presence, [her] care, [her] love, and [her] protection, maintenance, and the opportunity for the display of filial affection."

*In re Z.L.R.*, 306 S.W.3d 632, 635 (Mo.App. S.D.2010) (quoting *In re E.F.B.D.*, 245 S.W.3d 316, 324 (Mo.App. S.D. 2008)). Pursuant to section 211.447.2:[2]

2. Except as provided for in subsection 4 of this section, a petition to terminate the parental rights of the child's parent or parents shall be filed by the juvenile officer or the division, or if such a petition has been filed by another party, the juvenile officer or the division shall seek to be joined as a party to the petition, when:
(1) Information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months; or
(2) A court of competent jurisdiction has determined the child to be an abandoned infant. For purposes of this subdivision, an **"infant"** means any

---

[1] *See* **Houston v. Crider**, 317 S.W.3d 178, 186-87 (Mo.App. S.D. 2010).

[2] All references to statutes are to RSMo Cum.Supp. 2013, unless otherwise indicated.

child one year of age or under at the time of filing of the petition. The court may find that an infant has been abandoned if:

> . . . .

(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so[.]

The favorable evidence supporting the termination on the ground of abandonment includes the following:

Child came to the attention of the Children's Division while being treated in the Neonatal Intensive Care Unit ("NICU") after Child exhibited symptoms at birth indicating a withdrawal from controlled substances. Mother had admitted to using controlled substances during her pregnancy, including methamphetamine and heroin, and claimed she had checked into a methadone clinic just prior to Child's birth and was receiving treatment until the time of birth. Mother was twice requested to take a drug test; she was a no show for the first test and, although Mother told the Children's Division worker that she would "be dirty for marijuana and pain pills," she tested negative in the second test. She did participate in "touch times" and feedings in the NICU while Mother herself was still hospitalized, but not as consistently as she was requested to and very sporadically after Mother's discharge. Ultimately, after Child's birth, Mother was without stable housing, was unemployed, and had no income while Child was in the NICU. Further, Mother did not advise the Children's Division investigator that she was incarcerated on the day that Child was discharged from the hospital. Because the investigator did not know where Mother was and because of Mother's prior drug history, Child went into the foster care system on her discharge. The

3

trial court could have found from this evidence that Mother initially abandoned Child at the hospital.

After Child entered the foster care system, the Children's Division attempted a service plan where Mother would attend in-patient drug treatment upon her release from jail; however, Mother did not have any contact with the Children's Division (and, thus, Child) for six weeks. At that time, she called the Children's Division to admit to being arrested again; she also admitted that during the period of time that she had been out of jail that she had used controlled substances and she had done nothing to be re-unified with Child. In Mother's words, she "was a mess" during that period. She was sent to the Missouri Department of Corrections for parole violations and entered a one-year behavior medication treatment program to address her drug use issues; however, Mother's participation in that program was terminated for two violation reports. Her release date was pushed back as a result of her failure in the treatment program.

Mother next argues that the following evidence should be considered in the totality of evidence and makes the favorable evidence finding abandonment lacking in probative value. Prior to her imprisonment and Child's release from the hospital, the caseworker noted that Mother had accumulated suitable supplies for Child, including a bassinet, clothes, food, and soap. While she was in prison, Mother substantially complied with her treatment program, including participating in Parents as Teachers, Alcoholics Anonymous, GED classes, and an anger management program. At the time of trial, Mother was enrolled in and waiting to begin ICVC, a victims' impact program. Also, she had applied for Beauty for Ashes, a Christian-based re-entry program, but had to have only one year left on her sentence before she could go to the program. She sent letters

and pictures monthly and offered financial support, although it was turned down by the caseworker because child support had not been ordered yet.

Unfortunately for Mother, these facts did not convince the trial court that Mother had not abandoned Child, nor do they compel, under our standard of review, a reversal of the finding that Mother abandoned Child. First, as noted by the trial court, when Mother had the opportunity to visit Child while she was out of prison she did not do so; she admitted that she was a "mess" during the period of time following Child's birth. Second, Mother was incarcerated and was not able to continue her previous drug lifestyle. Mother was given the opportunity to obtain earlier release from prison and, thus, be able to provide a home for Child by completing a treatment program. Instead, she received two violation reports, one for a violent offense and one for a very minor infraction, but both of which caused her to be dismissed from the program and pushed her release date back. Her one and only job in prison was to prove herself fit as a parent to Child. She may not have thought of the consequences of her failing the treatment program but it had a real consequence to her infant child. It delayed the possibility of any earlier reunification between Child and Mother. Thus, there was substantial evidence of abandonment and the finding of abandonment is not against the weight of the evidence. Mother's first two points have no merit and are denied.

Mother contends that, despite the evidence of abandonment, she subsequently "repented" of the abandonment.[3] "[A]bandonment, once established, continues until parental care and support are resumed." *In re T.H.*, 497 S.W.2d 210, 212 (Mo.App.

---

[3] Mother's third point contends the trial court erroneously declared and applied the law of abandonment when the real issue of the case was that of "repentance" of the abandonment. We deny Mother's third point as it is clear in the judgment that the trial court did explicitly address the issue of "repentance." Mother's substantive arguments on the trial court's finding are addressed in our analysis of her fourth point.

5

St.L.D. 1973).  Further, "[r]epentance of the abandonment may be determined by the actual or attempted exercise of parental rights and performance of parental duties following the abandonment." *Id.*  Mother cites us to the same evidence used to rebut the proposition that Child was abandoned.  The trial court found that because of her actions prior to and after her admittance into the Department of Corrections, Mother had not repented of her abandonment.  Specifically, the trial court noted the opportunity that Mother was given for an early release by completing the treatment program made available to her at the Department of Corrections and her failure to do so.  Given our standard of review, we cannot find the trial court erred in making that finding.  Mother relies upon her lack of "intent" to abandon Child but the trial court could have found that her actions belie her statement that she did not "intend" to abandon Child.  She behaved in a manner that left an infant without a mother from her birth in February of 2014, until at least 2016 or early 2017.  At no time did Mother actually, or attempt to, exercise her parental rights and perform her parental duties.  The finding that Mother did not repent of her abandonment is not against the weight of the evidence.  Point IV is also denied.

## NEGLECT

Because the finding of abandonment is supported by substantial evidence and not against the weight of the evidence, we do not address Mother's complaints (Points V and VI) concerning the finding of neglect.

## BEST INTEREST

We will address Mother's final point regarding a claim of error that it is not in the best interest of the minor child to terminate Mother's parental rights.  We first note that Child was separated from Mother at birth, thus, during this entire period of Mother being

6

a self-described "mess," this infant could not provide for herself. Child's entire life has been spent without Mother, thus, no bonds have been formed and cannot reasonably be formed prior to Mother's discharge from prison. The anticipated release date for Mother is 2017,[4] when Child will be at least three years old. Keeping in mind that it is the best interest of the child from the facts known to the trial court at the time of trial, we cannot find an abuse of discretion in the trial court's finding that it is in the best interest of Child that Mother's parental rights be terminated. Point VII is denied.

The judgment is affirmed.

Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, J. - Concurs

William W. Francis, Jr., J. - Concurs

---

[4] Mother testified that she has three potential release dates – earliest release of April 2016, guideline date of 2017, and a maximum outdate of 2021.