JEFFREY W. BATES, J.
C.L.B. (Father) appeals from a judgment terminating his parental rights to his daughter, C.E.B. (Child).[1] The trial court terminated Father's parental rights on the statutory ground of neglect, due to: (1) a mental condition; (2) chemical dependency; and (3) repeated failure to provide for Child. See § 211.447.5(2)(a), (b) and (d).[2] Father presents five points for decision. Father's first point contends the trial court erred in "holding a Permanency Hearing on the same date as the Jurisdictional Hearing[.]" Father's next three points contend that the findings were against the weight of the evidence with respect to each of the three aforementioned factors supporting the neglect ground for termination. Father's fifth point contends the trial court abused its discretion by finding that termination was in Child's best interest. We affirm.
Standard of Review
A trial court's judgment terminating parental rights "will be affirmed if the record supports at least one ground *211 and supports that termination is in the best interest of the children." J.A.R. v. D.G.R. , 426 S.W.3d 624, 630 (Mo. banc 2014). We review a statutory ground for termination by determining whether the ruling is supported by substantial evidence, is against the weight of the evidence, or involves an erroneous application or declaration of the law. Id . at 626 ; In re Adoption of C.M.B.R. , 332 S.W.3d 793, 815 (Mo. banc 2011). The judgment will be reversed only if we are left with a firm belief that the judgment is wrong. C.M.B.R. , 332 S.W.3d at 815. We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." C.M.B.R. , 332 S.W.3d at 801. We defer to the trial court's assessment of credibility. Id . at 815. An abuse-of-discretion standard is used to review a trial court's decision that termination of parental rights is in the child's best interest. Id . at 816 ; see J.A.R. , 426 S.W.3d at 626. The trial court's judgment is presumed valid, and the burden is on the appellant to demonstrate that it is incorrect. Houston v. Crider , 317 S.W.3d 178, 186 (Mo. App. 2010). Further, "this Court reviews for prejudice and not mere error." Matter of Care & Treatment of Sebastian , 556 S.W.3d 633, 645 (Mo. App. 2018). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." Id . at 645-46 ; see Jones v. Jones , 536 S.W.3d 383, 385 (Mo App. 2018).
Factual and Procedural Background
Child's mother and Father have a history with the Children's Division (Division) and the juvenile division of the 31st Circuit Family Court Division. See 31st Judicial Circuit Local Rules 1.2 and 1.2.1.[3] The couple had another child - Child's full sibling (Sibling), under the court's jurisdiction from February 2014 through December 2015. Sibling came into care after testing positive at birth for methamphetamine and amphetamine. The court terminated jurisdiction due to adoption. Both mother and Father voluntarily terminated their parental rights to Sibling in August 2015.
Child was born in February 2017. At birth, Child also tested positive for amphetamines, and "was going through withdrawals at the time." Father knew mother was using methamphetamine while she was pregnant with Child. At that time, Father also used methamphetamine "on and off" and did not seek treatment. After Child was born, Father and mother argued at the hospital. Mother was not cooperative with the Division investigator and ultimately left the hospital against medical advice, leaving Child in the nursery.
The next day, the Division put a safety plan in place whereby Child was discharged from the hospital and placed with mother in the home of the maternal grandmother. Father was not living with mother at the time. Constance Brown was the first Division caseworker assigned to work with the family. Father would not return her phone calls, so she was not able to offer services to him. Father refused to take a drug test. Although instructed to complete a substance abuse assessment at C-STAR, he did not do so. He also continued to engage in domestic violence with mother. Because Father failed to cooperate, the Division was only able to provide initial services to mother. As of June 2017, the Division was providing: (1) Family-Centered Services (FCS) in the home to assist mother with substance abuse treatment *212 and counseling; and (2) Intensive In-Home Services (IIS) in the home in order to assure Child's safety and prevent Child from coming into alternative care. Due to mother's ongoing drug use, however, IIS could not assure the safety of Child.
On August 11, 2017, Child came into care. The ongoing concerns included Father's substance abuse issues and domestic violence with mother.
On September 29, 2017, the court held an adjudication hearing and determined that Child was within the court's jurisdiction and in need of care and treatment pursuant to § 211.031.1(1). The court found the allegations in the petition for care and treatment to be true. As to Father, the court referenced his history with the Division and the court concerning Sibling in 2014-15. The court also made the following findings with respect to Father's continuing issues with substance abuse and domestic violence:
The father admitted to a history of substance abuse issues. He reported that "ninety percent" of his usage was marijuana, but he has also used methamphetamine in the past. The father refused to take a drug test stating that it would incriminate him.
Despite [Child] testing positive at birth, ... the parents' lack of cooperation, the father's admission to drug use and the parents' history with Children's Division and this Court, Children's Division offered the ... father services without making a referral to the juvenile office. [F]ather did not follow through with services as directed by Children's Division. The mother and father continued to have arguments and domestic violence issues. [F]ather did not engage in substance treatment and never submitted to a drug test.
The court also found that "prior to removal, reasonable efforts were made to prevent or eliminate the need for removal, and that those reasonable efforts included [Division] services."
According to the docket sheet, that same day, over Father's objection, the court also held a permanency hearing. The court found no exceptions to the filing of a termination of parental rights petition and ordered the juvenile office to file such a petition. The court also ordered Father's prior treatment plan to remain in effect.
On October 4, 2017, the court ordered Father to participate in Family Treatment Court (FTC), which is a program for parents who have a known drug history to get substance abuse treatment and counseling. In order to successfully complete this program, a participant must call in every day, test when asked, and make progress in their treatment program. Father failed to comply with the program and was expelled in January 2018.
On February 14, 2018, the court held a trial to terminate parental rights. The Guardian ad Litem (GAL) appeared on behalf of Child. Father appeared in person and with his attorney. Father also testified at trial.
Division caseworker Austin Brown (Austin) managed Child's case from August 2017, when Child came into care, to the time of trial.[4] With respect to Father's drug testing, Austin testified about an Aversys report indicating that: (1) from October 5, 2017 to December 14, 2017, Father tested positive for amphetamine and THC approximately 19 times; and (2) from November 30, 2017 to January 18, 2018, Father *213 failed to submit to requested drug testing 10 times. As a result, Father was expelled from FTC for noncompliance on January 24, 2018.
Austin further testified that he had not received any verification that: (1) Father had engaged in any substance abuse treatment after being expelled from FTC; or (2) Father had attended NA/AA meetings. On December 11, 2017, Father declined inpatient substance abuse treatment at Recovery Outreach Services. On December 15, 2017, the court suspended Father's supervised visitation with Child after a positive drug test the day before.
Father did submit to a psychological assessment update in December 2017 with Dr. Mark Bradford, but the doctor's report was not favorable to Father. Admitting that he is a drug addict, Father reported to Dr. Bradford that he smoked methamphetamine the night before the updated assessment. Father struggled with substance abuse for the four years immediately preceding trial.
Dr. Bradford reported that Father has several diagnosable mental conditions which prevent him from safely caring for a child. The doctor explained that, until Father fixes his drug problem and other problems, he is not a suitable person to care for a child. Dr. Bradford also reported that, at the time of the updated assessment, Father did not meet minimum parenting standards to care for a child.
Austin testified that Father did not have a safe home environment which meets minimum community standards for Child. Throughout Austin's tenure as case manager, there continued to be ongoing domestic violence between Father and mother. Father did not complete the "HIT No More" program.
Although Father was employed, he did not provide any financial support other than in-kind support for Child. Father did not provide any in-kind support for Child after his visitation with Child was suspended.
During Father's testimony, he admitted to last using methamphetamine approximately three weeks before trial. He also admitted that he has not completed any kind of treatment that he had been asked to complete.
Austin and the GAL recommended that the court terminate Father's parental rights to Child. The GAL opined that, given the years of Father's drug addiction, there was little, if any, hope of Father successfully addressing his drug addiction in the near future.
Thereafter, the trial court entered its judgment terminating Father's parental rights. This appeal followed. Additional facts will be included below as we address Father's five points on appeal.
Discussion and Decision
Point 1
Father's first point contends the trial court erred in "holding a Permanency Hearing on the same date as the Jurisdictional Hearing ... in violation of RSMo., 211.447, 211.032, 211.183 and 210.720 [.]" According to Father, he should have had a full year before a permanency hearing was held. To support this argument, Father cites § 211.447.5(3) and argues that "[a] parent cannot have their parental rights terminated under failure to rectify ... unless they have been provided this one-year period of time." For this reason, Father concludes that the "[j]udgment should be reversed and remanded requiring the Juvenile Court to start over with Father and thus giving him a full twelve months of reasonable efforts being provided by Children's Division." That argument has no merit.
*214 As an initial matter, Father's reliance on § 211.447.5(3) is misplaced because that subsection deals with the statutory termination ground of failure-to-rectify. See In Interest of J.A.L. , 547 S.W.3d 804, 809 (Mo. App. 2018). The one-year time period in § 211.447.5(3) is specific to that ground and is not found in § 211.447.5(2), which is the statutory termination ground of neglect. It was neglect, not failure-to-rectify, which was the basis for the trial court's decision here. Therefore, the one-year time period specified in § 211.447.5(3) has no application to the case at bar.
Father cites no other authority for his contention that the court erred in holding a permanency and jurisdictional hearing on the same day. Our review of the relevant statutes provides no support for Father's argument. With respect to the timing of a permanency hearing, § 210.720 specifies only that the court "hold a permanency hearing within twelve months of initial placement[.]" § 210.720.1. That time period was satisfied here.
Father argues that, by holding the permanency hearing on the same date as the jurisdictional hearing, the trial court "robbed Father of his ability to work a treatment plan and robbed him of having the opportunity to reunify" with Child. That argument incorrectly equates permanency with termination. While the goal of a permanency hearing is to establish a permanency plan for the child, "[t]he evidence would likely never be sufficient during a permanency hearing to justify termination of parental rights[.]" In Interest of S.R.R. , 489 S.W.3d 926, 928-29 (Mo. App. 2016). This is so because the permanency plan is interlocutory and subject to change. Id . at 928 ("while the permanency goal had been changed to adoption in April 2015 it could be changed back to reunification"); see In re T.G.O. , 360 S.W.3d 355, 357-58 (Mo. App. 2012) (a permanency plan is subject to change, not in itself a final judgment, and therefore is not appealable); see also In Interest of A.N.L. v. Maries County Juvenile Office , 484 S.W.3d 328, 330 (Mo. App. 2016) (no right to appeal non-final order denying foster placement with relative); In re L.E.C. , 94 S.W.3d 420, 425 (Mo. App. 2003) (noting that nothing in § 210.720 made a permanency hearing order appealable). Indeed, § 211.183.9 specifically provides that the Division may "concurrently engage in reasonable efforts" to prevent removal or make it possible for a child to return home "while engaging in such other measures as are deemed appropriate by the division to establish a permanent placement for the child." Id .
Here, Father continued to receive services after the September 29, 2017 hearing. The evidence, however, showed that he consistently failed to do what was necessary to be reunited with Child. Even if we were to conclude the trial court erred (which we do not), Father has failed to show any prejudice. See Jones , 536 S.W.3d at 385. Because Father has failed to demonstrate trial court error, much less prejudice, in holding the jurisdictional and permanency hearings on the same day, Point 1 is denied.
Points 2, 3 and 4
Father's next three points challenge each of the three factors supporting the neglect ground for termination under § 211.447.5(2). This subsection of the statute requires the court to consider evidence and make findings on four conditions when considering termination on the neglect ground: (a) mental condition; (b) chemical dependency; (c) severe or recurrent acts of abuse; and (d) repeated or continuous failure by the parents, although physically or financially able, to provide the child with adequate food, clothing, *215 shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development. § 211.447.5(2)(a)-(d). "These four factors are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves." In re K.M.C., III , 223 S.W.3d 916, 923 (Mo. App. 2007). Nevertheless, proof of one such factor is sufficient to support termination on the neglect ground. Id .
For ease of analysis, we first address Point 3, concerning chemical dependency under factor (b). This factor requires the court to consider and make findings as to whether there is a chemical dependency that would prevent a parent from consistently providing the necessary care, custody and control of the minor child, and that cannot be treated so as to enable the parent to consistently provide such care, custody and control. § 211.447.5(2)(b).
Here, the trial court found that Father "has such a chemical dependency, including, but not limited to, methamphetamines and marijuana" and that "Father has not successfully addressed this chemical dependency." The court further found that due to "father's failure to adequately address ongoing substance abuse[,]" the court accepted Father's consent to terminate his parental rights to Sibling, who tested positive "for amphetamines and THC at birth [and] was adjudicated as neglected and/or abused[.]" Like Sibling, Child also tested positive at birth "for amphetamines and THC[.]" The court also noted that, after birth, Child "underwent withdrawal from chemical dependency."
The court went on to make detailed findings with respect to Father's chemical dependency and its effect on his ability to consistently provide care, custody and control of Child:
Constance Brown, Family Centered Services ("FCS") caseworker, testified that father did not live in the home with mother and child while in-home services were being provided through Children's Division. Ms. Brown testified that father did visit occasionally, but would not consistently return calls from caseworkers. Ms. Brown further testified that father was referred to C-STAR for a substance abuse evaluation during this time period, but did not attend. Ms. Brown testified that Children's Division felt father was an inappropriate caregiver because of his continued use of controlled substances. It is also interesting to note that father never requested custody of the child prior to her coming into alternative care.
Austin Brown, foster care case manager with Springfield Partners, a Children's Division contract agency, testified that father's court-ordered treatment plan included successfully completing Greene County Family Treatment Court as well as undergoing a substance abuse evaluation and following all recommendations contained therein. In Family Treatment Court, father was required to undergo frequent, random drug testing, appear for regular meetings with the court, participate in recovery support groups and attend individual and group therapy sessions. Records admitted from Recovery Outreach and Avertest document father's positive drug test results and failure to attend treatment hours from October 2017 until January 2018. Case manager testified that while father did attend the assessment, he [did] not follow any of the recommendations for treatment from his substance abuse evaluation.
Father also failed to provide any documentation that he was attending AA/NA meetings regularly. Case manager testified *216 that father was expelled from Family Treatment Court on or about January 24, 2018 due to his noncompliance with the requirements for drug testing, court attendance and treatment hours. Case manager testified that he did not receive any documentation that father attended substance abuse treatment of any kind following his expulsion from Family Treatment Court. Case manager also testified that father has continued to use methamphetamines while the child has been in care.
Father testified that he knew mother was using methamphetamine throughout her pregnancy with the sibling and with the minor child. Father testified that he was asked to complete a substance abuse assessment and complete any follow-up treatment throughout the sibling's case, as well as this minor child's case, and failed to do so each time. Father further testified that he has struggled with substance abuse since the time the sibling came into alternative care in 2014.
Father stated that he did not seek any substance abuse treatment when he learned about mother's pregnancy with the minor child. Father testified that he knew mother was working with Children's Division and that the minor child may be placed into alternative care, but he also did not engage in any substance abuse treatment at that time. At the time of his testimony, father admitted to using controlled substances within the previous three weeks. The Court finds at least in part, the child came into care due to the father's use of controlled substances. ... The Court further finds that father has not demonstrated a desire to seek and/or follow through with drug treatment.
The court ultimately found that Father "has chosen controlled substances over the needs of his child." The court concluded that: (1) Father's "chemical dependency prevents [him] from providing the child necessary care, custody and control on a consistent basis and prevents [him] from participating in the child's life"; and (2) Father's "chemical dependency cannot be treated because [he] will not adequately address his addiction to methamphetamine." Finally, the court decided that Child "is significantly likely to suffer future harm if parental rights are not terminated because of the continuing neglect by the father."
Father challenges these findings and the trial court's conclusion pursuant to § 211.447.5(2)(b).[5] According to Father, the trial court's conclusion is against the weight of the evidence, in that: (1) "Father was not provided with a full year to reunify with his child;" (2) "no further evidence of a substance abuse evaluation or diagnosis of an untreatable chemical dependency was presented at all"; and (3) "all of the witness testimony failed to explicitly address the likelihood of future harm to the child and merely restate the alleged statutory grounds for termination and do not reflect how said condition reflects a significant likelihood of future harm." We are unpersuaded by these arguments.
With respect to the first argument, Father asserts that he "was not provided with the requisite twelve-month period needed to rectify the conditions resulting *217 in why the Child came into care." As explained in the previous point, Father confuses the failure-to-rectify ground for termination in § 211.447.5(3) with the neglect ground for termination in § 211.447.5(2), which does not include a one-year time period. In this case, however, Child was over a year old at the time of trial. Based on Father's voluntary termination of his parental rights to Sibling, Father knew when Child was born that he needed to treat his chemical dependency in order to be a part of Child's life. Instead, Father failed to follow through with the C-STAR assessment that he was instructed to complete and failed to return phone calls from the Division caseworker to receive services. He refused to submit to a drug test. After Child came into care, Father repeatedly failed to do what was necessary to treat his chemical dependency.
The crux of Father's remaining arguments is that the court's finding that Father's chemical dependency "cannot be treated because [he] will not adequately address his addiction to methamphetamine" is against the weight of the evidence. Although Father attempted to present his argument in the four-step format required for an against-the-weight challenge under Houston , 317 S.W.3d at 186-87, his analysis is flawed.[6] Under the fourth step, for example, Father argues the evidence showed the possibility he was treating his chemical dependency by pointing to a lack of updates from treatment providers between Father's last positive drug test in mid-December 2017 and trial in mid-February 2018. The trial court, however, obviously credited Father's own testimony, in which he admitted the use of methamphetamine approximately three weeks before trial. By simply relying on evidence and inferences favorable to Father, he has failed to comply with Houston's mandates, which renders his argument analytically useless and provides no support for his challenge. In Interest of N.L.W. , 534 S.W.3d 887, 899-900 (Mo. App. 2017). Further, as our Supreme Court has explained:
Against-the-weight-of-the-evidence review is very deferential. A judgment is only reversed in rare cases, when the reviewing court has a firm belief that the decree or judgment is wrong. A challenge to the weight of the evidence presupposes that substantial evidence exists to support the judgment. However, this type of evidentiary challenge is not an opportunity for an appellant to receive a new factual determination from a different court. A judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. Even when the *218 evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.
Matter of A.L.R. , 511 S.W.3d 408, 414 (Mo. banc 2017) (internal quotation marks, brackets and citations omitted). Here, Father has failed to show his against-the-weight-of-the-evidence challenge presents one of those "rare cases" requiring reversal. See id .
For all these reasons, the trial court's finding - that Father suffers from a chemical dependency, which prevents him from providing Child "necessary care, custody and control on a consistent basis" and cannot be treated so as to enable him to do so - is not against the weight of the evidence. See § 211.447.5(2)(b). Point 3 is denied. Because this factor alone is sufficient to support the neglect statutory ground for termination, we do not address Points 2 and 4, which are moot. See J.A.R. , 426 S.W.3d at 630 ; K.M.C. , 223 S.W.3d at 926.
Point 5
Father's fifth point contends the trial court abused its discretion by finding that termination of his parental rights was in Child's best interest. See § 211.447.6. "Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." In re A.S. , 38 S.W.3d 478, 486 (Mo. App. 2001) ; In Interest of A.R.T. , 496 S.W.3d 610, 618 (Mo. App. 2016). The determination of a child's best interest is an ultimate conclusion for the trial court based on the totality of the circumstances. A.R.T. , 496 S.W.3d at 618. Section 211.447.7 provides the trial court with seven factors to consider when determining whether termination of the parent-child relationship is in the best interest of a child. § 211.447.7(1)-(7); In re C.A.M. , 282 S.W.3d 398, 409 (Mo. App. 2009). "There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination." C.A.M. , 282 S.W.3d at 409 ; In re A.L.M. , 354 S.W.3d 645, 655-56 (Mo. App. 2011). In addition, it is the trial court's duty to weigh the evidence presented relating to best interest, and this Court will not reweigh that evidence. A.R.T. , 496 S.W.3d at 618. We also defer to the trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. Id . The following facts are relevant to this point.
The trial court made findings with respect to each of the seven best-interest factors under § 211.447.7, detailing in particular the following evidence relevant to factors (1)-(5):
a. The emotional ties to the birth parent: The evidence presented established that the child has been residing in a stable placement for some time and demonstrates a strong bond with her foster family. The evidence presented established that the child is in a permanent, forever home. The evidence presented established that the child does have limited emotional ties to her father .
b. The extent to which the parent has maintained regular visitation or other contact with the child: the child has had no contact or visitation with her father since December 2017 .
c. The extent of payment by the parent for the cost of care and maintenance of the minor child when financially able to do so including the time that the minor child was in the custody of the Children's Division or other child-placing *219 agency: The evidence presented was that the father has failed to pay for the cost of care and maintenance of the minor child including the time [Child] has been in the custody of the Children's Division .
It is common knowledge that illegal drugs cost money. If father can afford to purchase methamphetamine, then father is able to provide a minimum amount of support for the minor child. Father also has a history of having some employment during the pendency of this case but has totally failed to [provide] any money for the support of his child. While he has provided some food and personal items when visits did occur, the court only considers it to be token support and really of no consequence in considering the total needs of the child on a day to day basis throughout the time this child has been in care.
d. Additional services would not be likely to bring about a lasting parental adjustment so as to enable a return of the child to the father within an ascertainable period of time: The evidence presented established that no additional services can be offered to the father as father has refused to participate in any services on a regular basis . The evidence presented established that father has been offered substantial services to address his chemical dependency and improve his parenting; however, father has repeatedly failed or refused to attempt those services . Absent such services, father cannot make lasting adjustments to his parenting so as to enable a return of the child to father in the foreseeable future. The evidence presented established that father has not made significant progress on his court-ordered treatment plans. The evidence established that father has chosen not to participate in the child's life .
e. The father has demonstrated a complete disinterest in and a complete lack of commitment to the child by failing to provide financial support for the child and by failing to contact the child since on or about December 2017. The father did not take any remedial measures to have his parenting time reinstated with the child. The father has done nothing to provide or care for this child since the child came into alternative care.
(Emphasis added); see § 211.447.7(1)-(5).
Father argues that these best-interest findings were an abuse of discretion because "it was against the logic of the circumstances" to find: (1) "Child [had limited] emotional ties to the Father when Father was prohibited from having contact with the Child[,] there was evidence ... that visitation was not offered to Father as Father's visitation was suspended through [FTC and] there was no evidence ... visitation would harm the Child;" (2) "Child had adjusted and bonded to the foster parents when Father was denied in-person contact and telephone contact with the child"; and that (3) "Father was disinterested in or lacked commitment to the Child when he was denied contact with the Child [and] Father attended trial and appealed the decision of the trial [c]ourt." Again, we are unpersuaded by these arguments.
Father's arguments ignore the testimony and evidence favorable to the trial court's findings and conclusions, and merely recite evidence and suggested inferences favorable to his position. See J.A.R. , 426 S.W.3d at 632. Father's failure to consider our standard of review makes his challenge to the trial court's best-interest findings of "no analytical or persuasive *220 value." Id . Furthermore, the GAL recommended that termination of Father's parental rights was in Child's best interest, noting that due to "so many years of addiction[,]" she didn't see any hope of Father kicking his drug addiction in the near future. "Every child is entitled to a permanent and stable home." In re Z.L.R. , 347 S.W.3d 601, 608 (Mo. App. 2011) ; In re I.R.S. , 445 S.W.3d 616, 623 (Mo. App. 2014). Thus, the trial court's conclusion that termination was in Child's best interest was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." A.S. , 38 S.W.3d at 486. Finding no abuse of discretion, Point 5 is denied.
After a thorough review of the record, we are not left with a firm belief that the trial court's decision is wrong. See C.M.B.R. , 332 S.W.3d at 815. The record supports the neglect ground and that termination is in Child's best interest. See J.A.R ., 426 S.W.3d at 632-33. We therefore affirm the judgment terminating Father's parental rights to Child.
DANIEL E. SCOTT, J. - CONCUR
MARY W. SHEFFIELD, J. - CONCUR

The parental rights of Child's mother also were terminated with her consent and are not at issue in this appeal.

All references to statutes are to RSMo (2016). All references to rules are to Missouri Court Rules (2018).

Local Rule 1.2 authorizes the presiding judge, by administrative order, to designate one or more divisions as the Family Court Division. Local Rule 1.2.1 makes the juvenile division a part of the Family Court Division.

For purposes of clarity, we refer to Austin Brown by his first name because he and Constance Brown, the initial caseworker before Child came into care, share the same surname.

Father's point specifies that the findings supporting this factor are "not supported by substantial evidence," but in the argument portion of his brief, he argues that the findings "are against the weight of the evidence." Because Father's argument presented an "against-the-weight-challenge" as outlined in Houston , 317 S.W.3d at 186-87, we address his point as such a challenge. See infra , n. 6.

This Court recently summarized the Houston four-step analysis in In the Interest of C.Z.N. , 520 S.W.3d 828 (Mo. App. 2017) :
To present an argument that the judgment is against the weight of the evidence, the appellant must complete four distinct analytical steps:
(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition;
(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
(4) Demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.
Id . at 834 ; Houston , 317 S.W.3d at 186-87 ; see also J.A.L. , 547 S.W.3d at 813.