

# Missouri Court of Appeals

## Southern District

### Division Two

IN THE INTEREST OF B.E.D.,   )
MINOR,   )
  )
BARRY COUNTY JUVENILE OFFICE,   )
  )
   Respondent,   )
  )
vs.   )   No. SD36546
  )
R.G.D,   )
  )   **Filed: July 29, 2020**
   Appellant.   )

APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Judge Johnnie E. Cox

**<u>AFFIRMED</u>**

R.G.D. ("Father") appeals the trial court's judgment terminating his parental rights to B.E.D. ("Child").[1] The trial court terminated Father's parental rights to Child based on two statutory grounds: abuse or neglect and failure to rectify. *See* §§ 211.447.5(2) and (3).[2] The court further found termination of Father's parental rights was in Child's best interest. *See* § 211.447.6. In his sole point relied on, Father argues

---

[1] At the termination hearing, Child's mother ("Mother") consented to the termination of her parental rights and her parental rights are not at issue in this appeal. We mention Mother only as necessary to state the facts related to Father.

[2] All statutory citations are to RSMo. Cum. Supp. (2018).

the trial court erred in finding termination of Father's parental rights was in Child's best interest. We find no abuse of discretion and affirm the judgment.

## Factual and Procedural History

When this Court reviews a judgment terminating parental rights, it views the evidence and related reasonable inferences in the light most favorable to the judgment. *Interest of C.E.B.*, 565 S.W.3d 207, 211 (Mo. App. S.D. 2018). So viewed, the following evidence was presented at trial.

Child was born in March 2017.[3] On May 21, 2017, Father drove approximately 20 miles on a public road at midnight on a farm tractor with Mother and Child while he was intoxicated. Father had a BAC of .160, and Mother also appeared to be intoxicated. Father was arrested and Child was taken into care.

Father was charged with driving while intoxicated ("DWI") as a habitual offender, driving while revoked/suspended, endangering the welfare of a child, failure to drive on the right half of a roadway, and failure to secure Child in a child restraint. Father later pled guilty to DWI, was sentenced to four years in prison and has been incarcerated since June 9, 2017. Child has continued in care since the date of the incident.

In December 2018, a petition to terminate Father's parental rights was filed. The termination hearing was held in November 2019. At the hearing, a caseworker from the Children's Division ("CD") and Father testified.[4] Child's guardian *ad litem* ("GAL") also testified.

Danielle Lee, Child's CD caseworker ("Caseworker"), testified regarding her involvement with Child's case. Caseworker testified Father had previously pled guilty to

---

[3] Paternity of Child is not disputed.
[4] Father appeared at the hearing by video from his location at Northeast Correctional Facility in Bowling Green, Missouri.

DWI on multiple occasions and also pled guilty to driving while revoked and suspended. Father's parental rights to two other children had been terminated in earlier proceedings.

Caseworker testified records from the prison indicated Father had been diagnosed with an alcohol addiction problem. Father had not completed any substance abuse or alcohol programs while incarcerated.[5] Father had not successfully completed a recommended parenting program. A social summary showed Father had been diagnosed with Major Depressive Disorder with psychosis and Alcohol Use Disorder in controlled remission.

Regarding Father's efforts to maintain contact with Child and support Child, Caseworker testified Father sent letters and a birthday card to Child. Father had not provided any financial support for Child, nor had he provided any gifts or in-kind support.[6] Caseworker testified Father had not rectified the conditions causing Child to be taken into care and Caseworker did not believe additional services could be offered which would enable reunification within a reasonably ascertainable period of time. Caseworker believed Child had no emotional ties to Father because Father had been incarcerated for the majority of Child's life and Child did not remember Father. Caseworker opined it would be detrimental to Child to remove her from her current placement.

Father testified he first used alcohol at age five and had issues with alcohol for approximately 45 years. He acknowledged having been found guilty or having pled guilty to six or seven DWIs. He testified he had undergone several prior treatments for

---

[5] Father did attend AA meetings.
[6] Father told CD he would pay $.50 per month for child support but never made a payment.

alcohol-related substance abuse, including a 120-day treatment and a year-long treatment. Father agreed it had been recommended that he participate in another long-term treatment program, and that his evaluation showed him to have severe withdrawal and severe relapse risks. Father also admitted he had been found guilty of having contraband while incarcerated. Father testified he had two visits with Child before he went to prison. Father's anticipated release date from prison is September 10, 2021.

The GAL testified to the lack of bond between Father and Child. She did not believe that "a 45-year history with alcohol is going to be cured any time in the near future, especially since there hasn't been a whole lot of treatment so far while he's been in prison." It was her opinion that termination of Father's parental rights was in Child's best interest.

In Father's one point on appeal, he contends the trial court's best interest findings are an abuse of discretion. Finding no merit in this point, we affirm.

**Standard of Review**

A trial court's decision that termination is in a child's best interest is reviewed under an abuse of discretion standard. ***J.A.R. v. D.G.R.***, 426 S.W.3d 624, 626 (Mo. banc 2014). An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances before the court and is "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***Interest of J.P.B.***, 509 S.W.3d 84, 96 (Mo. banc 2017) (internal citation and quotation omitted). When reviewing questions of fact, this Court recognizes the trial court is "free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." ***J.A.R.***, 426 S.W.3d at 627. The

trial court's judgment is presumed valid, and it is the appellant's burden to demonstrate it is incorrect.  *C.E.B.*, 565 S.W.3d at 211.

## Discussion

In one point on appeal, Father argues the trial court abused its discretion in finding termination of his parental rights was in Child's best interest because:

> Father had provided care and a suitable home and support for [Child] before going to jail; Father had made every effort to engage with and maintain a relationship with [Child] after [Child] was taken into care and while Father was incarcerated; Father had never expressed consent to termination of his parental rights; Father had applied himself to self-improvement efforts while in jail; he was on the waiting list for alcohol treatment; Father has never harmed [Child]; and it is in the best interests of [Child] to preserve the relationship between the natural parent and [Child] if possible.

"The determination of what is in a child's best interest is an ultimate conclusion for the trial court based upon the totality of the circumstances." *In re K.M.W.*, 342 S.W.3d 353, 359 (Mo. App. S.D. 2011).  Section 211.447.7 enumerates seven factors the trial court must consider when determining whether termination of the parent-child relationship is in the best interest of a child.  *C.E.B.*, 565 S.W.3d at 218.

There is no requirement that all seven of these factors must be negated before termination can take place, and there is no minimum number of negative factors required for termination.  *In re C.M.H.*, 408 S.W.3d 805, 815 (Mo. App. S.D. 2013).  These factors merely serve as an aid to the trial court's best interest determination.  *Id.*

Here, the trial court analyzed the factors under section 211.447.7, and found five factors unfavorable to Father:[7]

---

[7] Regarding the factor found at 211.447.7(5), the parent's disinterest in or lack of commitment to the child, the trial court's finding addresses only Mother.  Regarding the factor found at 211.447.7(7), the trial court made no finding.  The trial court's findings related to Mother have been omitted, unless needed for context.

[1] There are no emotional ties between [Child] and [Father] or [Child] and [Mother]. [Child] was removed from her birth parents and placed in foster care at approximately 2 months of age, and has remained in foster care continuously, to date. To [Child], her birth parents are strangers.

[2] Neither [Mother] nor [Father] has had meaningful and consistent in-person contact with [Child] since she came into protective custody. Father has written [Child] and sent her some cards, but [Child] is not yet three-years of age, and does not read or understand who the cards/letters come from.

[3] Neither [Mother] nor [Father] has provided any payment for the cost of [C]hild's care and maintenance, monetarily or in-kind, during the two and one-half years that [Child] has been in the custody of [CD] and other than Father's incarceration, there is no evidence that either is physically or financially unable to provide support for [Child];

[4] Additional services are not likely to bring about a lasting parental adjustment enabling a return of [Child] to [Father] within an ascertainable period of time given the length of his remaining incarceration, and considering the time he would have to devote to long-term alcohol abuse treatment before being considered safe and appropriate for reunification.

. . . .

[6] While incarceration in and of itself is not grounds for termination of Father's parental rights, it cannot be overlooked that due to Father's ongoing incarceration, and the long-term treatment he will require for his alcohol dependency, [Child] will continue to be deprived of a stable home with Father for a number of years in addition to the two and one-half years she has already spent separate from [Father]. [Child] does not know Father and that will not change over time.

Father had not had in-person contact with Child since she was just a few months old and Child had no emotional bond with Father. Missouri courts have found termination of parental rights to be in the best interest of a child when, among other things, the evidence demonstrates the child had no relationship with the parent. *See, e.g.*, ***In Interest of J.B.L.***, 479 S.W.3d 776, 780 (Mo. App. S.D. 2016); ***T.W.C. v. Children's Div. of Div. of Soc. Servs.***, 316 S.W.3d 538, 542 (Mo. App. W.D. 2010).

6

Father's anticipated release from prison will occur in September 2021, when Child will be over four years old and no bond between Father and Child can reasonably be anticipated to form in the interim period. *See J.B.L*, 479 S.W.3d at 780. "[A] lack of bonding is substantial evidence supporting that termination is in the best interest of the child[.]" *In re Z.L.R.*, 347 S.W.3d 601, 611 (Mo. App. S.D. 2011) (internal citation and quotation omitted).

Father's efforts to maintain contact with Child during his incarceration, *see* § 211.447.7(2), included Father's correspondence with CD, his request for CD to communicate with Child on his behalf, and some cards and letters sent to Child. Correspondence to CD does not constitute maintaining contact with Child. It is Father's incarceration, resulting from his own volitional criminal activity, that is the reason he has not been able to have meaningful contact with Child. *See Z.L.R.*, 347 S.W.3d at 611. Father's birthday cards and letters, sent to Child who had no memory of him and who cannot read, do not establish or guarantee a bond. *See K.M.W.*, 342 S.W.3d at 364. This is particularly true with someone as young as Child.

Father admitted he had not provided support for Child. The significance of child support paid by an incarcerated parent "is not necessarily the amount of the support[.]" *Id.* at 362 n.12. Rather, a minimal contribution made by an incarcerated parent evinces an intent to continue a relationship with the child. *Id.* While Father excuses his lack of support for Child on the basis of his minimal income while in prison, the trial court's finding that Father had not provided any monthly or in-kind support for Child is supported by Father's own testimony.

Regarding additional services that could be provided to Father to enable a lasting parental adjustment such that Child could be returned to Father within an ascertainable

7

period of time, *see* § 211.447.7(4), the trial court found no such additional services were available considering Father's current incarceration, his subsequent need for long-term treatment for alcohol abuse, and the uncertainty of his circumstances following his release from prison. Father emphasized the numerous classes he had completed, and that he was on the waiting list for other classes, without explaining how any of these classes aided reunification with Child. Although Father testified he thinks he will receive additional substance abuse treatment before he is released, and that he will be able to avoid alcohol problems upon his release, the trial court was free to disbelieve his testimony. *See J.A.R.*, 426 S.W.3d at 627.

Finally, the trial court found that the length of Father's ongoing incarceration and his need for additional long-term treatment meant that Child would continue to be deprived of a stable home for a period of years in addition to the two and one-half years Child had already spent apart from Father. As the Supreme Court of Missouri has noted when considering grounds for termination under section 211.447.5(6), "it is the *duration* of incarceration and the impact of such duration when considering all relevant circumstances, including the child's age, that may render a parent unable to care appropriately for the child for the reasonably foreseeable future." *J.P.B.*, 509 S.W.3d at 96. By the time Father is released from prison, Child will have been in State care for over four years with no memory of Father and no reasonable likelihood that Father will then be able to care appropriately for Child. It is the best interest of Child, not of Father, that is our "primary concern[.]" *J.A.R.*, 426 S.W.3d at 632. Furthermore, the GAL recommended termination of Father's parental rights due to his long history of alcohol abuse over a 45-year time period. It was within the court's reasonable discretion to find that Child's best interest was not served by having Child

remain indefinitely in foster care. *See **In re J.K.,*** 38 S.W.3d 495, 502 (Mo. App. W.D. 2001). "Every child is entitled to a permanent and stable home." ***Z.L.R.***, 347 S.W.3d at 608.

Considering Father's lengthy history of alcohol-related substance abuse, his history of relapse, the duration of his present incarceration, and Child's age, the trial court's finding that termination of Father's parental rights was in Child's best interest was not an abuse of discretion. Rather, this finding was "in line with the logic of the circumstances before it, was not arbitrary and unreasonable, and does not shock our sense of justice or indicate a lack of careful consideration." ***K.M.W.***, 342 S.W.3d at 365.

## Conclusion

The trial court's judgment terminating Father's parental rights is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

DON E. BURRELL, J. – CONCURS